## HUNTER v. O'NEIL.

1. An obligation to make a deed to certain lands when the price contracted for is paid, is in law a covenant to make a good title when the condition is performed by the purchaser.

2. When the vendor entering into such a contract becomes insolvent before the price is paid, and the purchaser shows an outstanding incumbrance created by the vendor, he will be entitled to relief in a court of equity.

3. But, unless the money is actually tendered upon condition that a title is made, the only relief is to enjoin the vendor from proceeding for the price until he gives indemnity against the outstanding incumbrance.

Writ of Error to the Court of Chancery for the 30th District.

THE case made by the bill is this: Hunter, the complainant, in the year 1836, purchased from O'Neil, the defendant, a half-quarter section of land for the price of $456, for which he executed his note to O'Neil, payable 25th December, 1837, and O'Neil executed an instrument under seal, binding himself, his heirs, &c. to make a deed for the land as soon as the note was paid. At this time O'Neil was in affluent circumstances, but afterwards failed and became insolvent. The note was reduced by payments, but a portion of the sum remaining due, O'Neil obtained judgment in 1841 for $219 81 debt, and $46 38 damages. At the time of the sale of the land, it was incumbered by a mortgage from O'Neil to the Tuscumbia and Decatur Railroad Company, which yet remains in full force, and the existence of which was unknown to the complainant when he purchased and took O'Neil's bond. The prayer is for a rescission of the contract, and for further relief.

The answer admits all the allegations of the bill with regard to the purchase, except the want of knowledge asserted by the complainant of the existence of the incumbrance, as to which it asserts that the fact was known or communicated. The defendant insists the mortgage spoken of does not become absolute until the year 1848, and that he is under no obligation to give any thing more than a deed when the money is paid. He admits his actual insolvency, but submits it may not continue always, and relies on his answer as a general demurrer to the bill.

The chancellor at the hearing dismissed the bill. This is now assigned as error.

T. M. Peters, for the plaintiff in error.
W. Cooper, contra.

GOLDTHWAITE, J.—1. The question here is, whether the obligation of the defendant to make a deed when the price for the land is paid, amounts to a covenant of warranty that he will then have a title; and if so, whether the complainant is entitled to any, and what relief, on account of the insolvency of the defendant taking place after the execution of the obligation, and previous to the payment of the price. In Cullum v. Branch Bank at Mobile, 4 Ala. Rep. 21, we had occasion to consider to some extent the obligations assumed by the vendor and purchaser in a sale of land. We there say the right of the purchaser to a good title is a right not growing out of the agreement of the parties, but is given by law—that courts of equity govern their proceedings by this just rule, and when an incumbrance is discovered before the execution of the conveyance, the vendor must discharge it, whether he has or has not agreed to covenant against incumbrances. A different rule obtains when the conveyance is executed; then the maxim of *caveat emptor* applies, and the remedy of the purchaser must arise entirely on the covenants of warranty, if there is no fraud in the transaction. The effect of an obligation to make title or give a deed at a future day in view of the principles just stated, may be assumed to be a covenant that the vendor will then make a good title, as it is impossible to conceive the parties were contracting— not with regard to that—but with respect to a worthless instrument, which a mere deed certainly would be, if it passed no title and contained no covenants of warranty. We are aware there are decisions which hold that an obligation to give a deed, is complied with by executing an instrument of that description without reference to the title, but it seems to us these are inconsistent with sound reason. See 4 Paige, 628; 2 John. 595; 12 Ib. 436; contra, 16 John. 267; 20 Ib. 130.

2. Taking the obligation of the defendant as a covenant that he will make the complainant a good title to the land sold him upon the payment of the note, it is evident no *legal* right arises until this condition is performed; nor would the

outstanding title in another person furnish a defence either at law or in equity, as the parties have not contracted with reference to that condition of things, and many previous decisions of this court show, that as long as possession remains with the vendee, he cannot resist an action for the price. We do not understand the complainant as controverting these positions, but as asserting the contract as one, which implies the ability of the vendor to respond in damages, if unable to perform his stipulations, and that his insolvency subsequent to the contract of sale, lets the purchaser in to resist the payment of the price and rescind the contract, which it becomes evident the vendor will not be able to perform. In Cullum v. Branch Bank, *supra*, when speaking of the attempt to urge a similar defence at law where the deed contained covenants of warranty and the purchaser was evicted, we said: "Such a defence, whatever may be its merits, cannot be called a failure of consideration, because without the warranty the purchaser would be remediless—if entitled to any remedy, it must be in consequence of the warranty and the subsequent insolvency of the warrantor, by which the covenant intended for the purchaser's security has become unavailable." We there determined that the circumstances referred to constituted no defence at law, but stated our impression, that the subsequent insolvency of the vendor, furnished a ground for equitable relief. In considering that subject, we said: "When the defendant accepted the covenant of warranty, this was doubtless considered as an effective security," and the vendor ought not to be permitted, when insolvent, to receive the purchase money, which he would be compelled to refund in an action on the warranty. It is true, in the case we have hitherto referred to, there was an actual eviction, but we apprehend the same principles apply when the purchaser, besides the insolvency, shows a paramount or outstanding title which may be asserted against him. In Long v. Brown, 4 Ala. Rep. 622, we state the principle that a court of equity will not interfere between parties to a contract when it is executory and no fraud has intervened, but will leave them to seek the redress they have stipulated for, unless there is some special ground for its interposition. Thus, chancery will interpose when the covenants of the par-

ties are independent, and the vendor cannot make or obtain the title, and is *insolvent*. The ground of interposition in such a case is to prevent the irreparable injury which must result from the payment of the purchase money to one, who cannot respond in damages for the breach of the contract on his part. In the more recent case of the Tuscumbia Railroad Co. v. Rhodes, 8 Ala. Rep. 206, we were required to consider the effect of insolvency as a distinct ground for equitable relief, and there held it sufficient to create the right in a surety to retain a debt prospectively due from him to his principal, until the latter either relieved or indemnified him against the debt for which he was responsible. We think the principles adverted to in some, and settled in other of the cases cited, sustain the complainant's right to relief of some kind, and we shall now proceed to state what we consider that relief to be.

3. It is evident the insolvency of the vendor, in itself is no ground for a rescission of the contract, inasmuch as the parties have stipulated the title should not be required until the price was paid. Doubtless if the money was tendered by this bill, and the vendor did not make a sufficient title, under the direction of the court a rescission of the contract might very properly be decreed, but then the complainant would be charged in the account with the rents and profits of the land during his occupation, if indeed it was so occupied by him; but all which he has the right to require in the present condition of the case, is to be placed as he would be by his contract if O'Neil was solvent. That is to have an indemnity against the outstanding mortgage, admitted to be in existence and created by O'Neil. The proper decree, is, that the plaintiff at law shall be enjoined until he executes a sufficient indemnity against that mortgage, and that he may, upon its removal, be allowed to proceed. The indemnity to be settled by a reference to the master.

Decree reversed and remanded, for further proceedings in conformity to this opinion.