430 So.2d 873 (1983)
William H. JACKSON and wife, Grace Jackson
v.
L.D. McREYNOLDS, INC., et al.
81-1010.
Supreme Court of Alabama.
April 1, 1983.
Daniel Baker King and Robert H. King, Gadsden, for appellants.
W.W. Watson, Watson & Watson, Fort Payne, for appellees.
*874 JONES, Justice.
This is an appeal from a judgment denying the equitable remedy of specific performance of an "option to purchase" real property contained in a leasehold contract between Plaintiff/Appellant William H. Jackson and Defendant/Appellee L.D. McReynolds, Inc.[1] Additionally, Plaintiffs claim damages for alleged injury and losses suffered by Defendant's fraudulent misrepresentations concerning the property's state of title. The trial court, after ore tenus hearing, found for the Defendants.
We reverse and remand.

FACTS
On October 21, 1975, Plaintiff William H. Jackson and co-defendant L.D. McReynolds, Inc., entered into a written leasehold/option to purchase the property, affording Jackson, inter alia, the option to purchase the subject property during the term of the lease and subsequent monthly leases for a price of $26,500. Jackson's option to purchase was conditioned upon his giving McReynolds, Inc., thirty days' prior written notice.
On September 30, 1981, thirty days before the expiration of the lease, Jackson notified McReynolds in writing of his intentions to exercise his option to purchase the leasehold realty. Receipt of this notice was acknowledged in writing by McReynolds on behalf of his corporation. Subsequently, but at some point prior to October 30, 1981, Jackson personally reconfirmed his intentions of exercising the option to purchase. At this time, McReynolds informed Jackson that he (McReynolds) would prepare the necessary deeds and hold them at his home until the date of transfer.
According to McReynolds, Jackson phoned him on the night of October 30, 1981, complaining of problems in securing the necessary financing for the purchase. The substance of Jackson's statements was that his bank had refused to make the loan because of an outstanding lien on the subject property. This evidence, as given by McReynolds, is reflected in the record as follows:
"Q Were you ever informed that that property had a lien on it?
"A It didn't have a lien on it.
"Q It never had a lien on it?
"A It had a lien on it when I bought it and the lien was set aside a number of years earlier than that.
"Q Were you ever notified by anyone there was a lien against it, or it had to be cleared up before the bank would make a loan on it?
"A I didn't know. I thought it had been cleared up. The Company sent me a letter stating it had been cleared up and I assumed it had been cleared up on record in the Courthouse.
"Q And you found out some time around November the 1st or 2nd or 3rd or 4th, this area, that it had not been cleared up, and you had it cleared up for recording something?
"A No. I found out on the [night] that Mr. Jackson called me.
"Q At that time 
"A That was on  Go ahead.
"Q At that time you found out about this, did you later get that lien removed off the property?
"A That was a Friday night. Monday morning I came in and I told Mr. Jackson at the time that there wasn't any lien on it. That I guaranteed there would be none on there, and if there was I would certainly clear it up.
"Q Did you clear it up?
"A I cleared it up.
"Q What date did you clear it up, please, sir? On Monday, Tuesday, Wednesday?

*875 "A On Monday, I believe.
"Q Would that have been November 2nd, 1981, when you cleared it up?
"A Uh-huh.
"Q Is that true? Okay. Up till that time you were then aware since Friday night that there was a lien against the property, and the bank wouldn't let the money out until that lien was cleared up; is that true? Is that a true statement?
"A Well, I didn't think there was a lien against it, really. I told Mr. Jackson that there wasn't one in it. He got the wrong people to run the title on it, because there shouldn't be one there.
"Q How did you clear it up?
"A I brought this letter I had up here at the Probate Judge and gave to the Probate Judge and said, `There's some controversy over this, I think it's already been cleared up. How about checking the records and finding out if it is?' He said, `To make things '
"Q We object to what he said, but you recorded it and cleared it up?
"A Yes, I recorded it.
"Q And that was this Exhibit here marked as Plaintiff's Exhibit 3, if you will. I believe this is the thing you had the Probate Judge release a lien that you recorded that you spoke about, put it on record; is that true?
"A It is.
"Q All right, sir. And you gave that to clear up whatever lien claim may have been against the property?
"A Yes.
"Q And that, as far as you know, cleared it up?
"A As far as I know.
"Q That was on Monday, November the 2nd, 1981; is that true to your best judgment?"
Immediately after the lien was cleared, Jackson notified McReynolds that he wished to tender the amount of $26,500 so as to exercise his option to purchase. McReynolds informed Jackson that he should meet with him the following morning. The next morning, November 3, 1981, both Mr. Jackson and his wife were informed by McReynolds that he had changed his mind and no longer wished to sell the property. McReynolds's position was based primarily on Jackson's failure to uphold his obligations under the contract by not closing the transaction on October 30, 1981. Additionally, McReynolds expressed his dissatisfaction with Jackson for holding the option to purchase for more than six years without making any attempt to exercise it.
Lee Clyde Traylor, the lawyer for the People's Bank of Collinsville (Jackson's bank), testified that on November 2, 1981, he personally delivered, at Jackson's request, an endorsed cashier's check for $26,500 to McReynolds's lawyer. Traylor further testified that he was informed by McReynolds's lawyer that he had no authority to accept the check, that lawyer expressing some uncertainty as to whether tender of a cashier's check constituted "tender" or "delivery of the money."[2]

SPECIFIC PERFORMANCE OF THE OPTION TO PURCHASE
McReynolds cites National Security Insurance Co. v. Stewart, 43 Ala.App. 274, 188 So.2d 774 (1965), wherein it is stated:
"The period of time within which an option is to be exercised is an inherent ingredient; and, unlike a contract which calls for no stated time for performance, the period of time in the case of an option is of the essence of the agreement. Long *876 v. Hirs, 270 Ala. 131, 116 So.2d 605." 43 Ala.App. at 277, 188 So.2d 774.
While we have no disagreement with this well-settled axiom of jurisprudence, we cannot agree that it should apply to the facts before us. Stated another way, under the facts of this case, Jackson did not "fail to exercise his option on time."
As stated in Kennedy v. Herring, 270 Ala. 73, 116 So.2d 596 (1959):
"An agreement to `sell' imports an agreement to execute an instrument passing title. As said in Asbury v. Cochran, 243 Ala. 281, 283, 9 So.2d 887, 889, supra:
"`The general rule is that in the absence of stipulations to the contrary, every contract for the sale of real estate implies that a good title will be made. Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420; Baker v. Howison, supra [213 Ala. 41, 104 So. 239, 52 A.L.R. 1452].
"`This applies to an executory contract for the purchase and sale of real estate and is given by law, and exists until the contract has been performed by the execution of a deed.'" 270 Ala. at 77, 116 So.2d 596.
See, also, Hunter v. O'Neill, 12 Ala. 37, cited and quoted from in Kennedy.
The record is abundantly clear that Jackson, as of October 30, 1981, was unable to tender to McReynolds the agreed upon purchase price for the subject property; and this was a direct result of McReynolds's failure to present for examination a good and marketable title. In response to this fact, McReynolds stated, in effect, that "there was no cloud on the title," or, "if there was one, there should not have been."
The mere fact that McReynolds thought he held good and marketable title does not satisfy his obligation of confirming this fact upon the public records  public records which, in this case, were found to evidence something short of good title. The reason for Jackson's failure to make the necessary tender within the prescribed time rests upon McReynolds and not upon himself. Cf., Herring v. Prestwood, 379 So.2d 548 (Ala.1979).

PLAINTIFFS' TENDER OF THE CASHIER'S CHECK
McReynolds contends that by submitting a "cashier's check" for payment of the $26,500  the sales price of the realty under the option contract  Jackson failed to deliver "cash." We disagree.
In 86 C.J.S. Tender § 26 (1954), it is stated:

"Cashier's checks. A cashier's check may constitute a sufficient tender where no objection is made on this ground."
Recognizing the fact that McReynolds's lawyer "expressed his concern" as to whether delivery of a cashier's check constituted sufficient tender of "currency," under these circumstances, we cannot equate this with the making of an objection to this form of payment. In light of the facts that 1) all parties were aware of the $26,500 purchase price; 2) the common realities of the situation dictate that payment be made by check and not in cash; and 3) the "objection" was not intended as affording Jackson the opportunity of substituting cash for the tendered cashier's check, we hold that by tendering the cashier's check, Jackson did "tender money" for payment of the realty.
After considering each of Appellees' other arguments in support of the trial court's decree denying specific performance, we find them without merit. We recognize, and reaffirm, the oft-stated proposition of equity jurisprudence laid down in Wilder v. Reed, 216 Ala. 29, 30, 112 So. 312 (1927):
"[I]n cases of specific performance complainant must establish his case by such proof as to produce clear conviction in the judicial mind. `Courts, in such cases, will not grope their way on inconclusive probabilities.' "216 Ala. at 30, 112 So. 312.
Where, as here, however, the evidence, which in all material aspects is without dispute, establishes a clear right to specific performance, we are compelled to reverse the judgment denying relief and to remand the cause with instructions to enter an appropriate order granting specific performance.
REVERSED AND REMANDED WITH INSTRUCTIONS.
*877 MADDOX, SHORES and BEATTY, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice, concurring specially.
After reviewing the option contract between the parties, I am of the opinion that the defendant's argument that tender of the purchase price must have been made in cash is totally without merit.
The contract between the parties reads as follows:
"The Lessee shall have the option during the term of the lease and subsequent monthly lease to purchase the commercial property, buildings and facilities, located thereon at a price of Twenty Six Thousand Five Hundred Dollars ($26,500.00). The Lessee shall give the Lessor thirty (30) days written notice of his intention to exercise this option. Monthly rental does not apply to purchase price."
There is no requirement in the contract that payment be made in "cash." The contract requires notification of the seller and a purchase price of $26,500.00. No mode of payment is specified. Therefore, Jackson has tendered the purchase price, as specified in the contract, by delivering a cashier's check for $26,500.00.
NOTES
[1] The original contract did not include Mrs. Grace Jackson (William H. Jackson's wife) as a party thereto. Additionally, as stated therein, the "lessor" of the property was L.D. McReynolds, Inc., as opposed to L.D. McReynolds individually, although McReynolds later admitted this was an error as he personally owned the property in question.
[2] Defendants cite § 6-8-100:

"An answer of tender of money or of a thing in action must be accompanied by a delivery of the money or such thing in action to the clerk of the court. If the tender is of ponderous articles or other personal property, the answer must aver a readiness to deliver it to the plaintiff. Judgment for the defendant upon the answer vests the title to the thing tendered in the plaintiff, subject to any claim the defendant may have for his trouble in keeping it."