ALMON, Justice.
This is a declaratory judgment action seeking a determination of whether the plaintiff, Ilia Verne Haddox, has an option to purchase real property owned by the defendants, Roy and Evalyn Walker. The trial court entered summary judgment for the defendants, declaring that no option to purchase the described property exists between the parties.
On February 1, 1974, Roy and Evalyn Walker signed as “owner-sellers” and Wendell Lee Haddox and Ilia Verne Haddox signed as “purchasers” an instrument styled as a “memorandum.” That instrument contains numerous apparent errors, but we reproduce it here as precisely as possible:
“MEMORANDUM
“STATE OF ALABAMA,
“COUNTY OF BALDWIN.
“This is a preliminary outline of a transaction to be closed with the formal legal documents as soon as convenient and within the next 60 days or less.
“This transaction concerns a sale of a marina and house at Orange Beach and Terrys Cove which has been surveyed the 10th day of October, 1973, by McNeil Robinson, Ala.Reg. No. 1065, and is described as follows:
“ ‘Commence at the Northwest comer of Section 12, Township 9 South, Range 5 East, run thence South 900.5 feet, ran thence East 5155.9 feet, run thence South 00 degrees 40 minutes West 541.0 feet, to the point of beginning, run thence South 00 degrees 40 minutes West 728.0 feet, more or less, to the North margin of Terry cove, run thence East, along and with the said North margin of Terry Cove, 190.0 feet, run thence North 00 degrees 40 minutes East 728.0 feet, more or less run thence West 190.0 feet, to the point of beginning.’
“The property now being purchased conveys the littoral rights on the North margin of Terrys Cove and as shown on the map, the width is 190 feet with an adjoining 40 feet road to the Bay which is more or less of a private road for business properties, one-half (20 feet) of which is part of the property. This property is known as the Walker Marina property and the Walker homesite. With this marina property and house, is included all stock of merchandise, gasoline, the trade name, good will of said business, all future bookings for fishing parties. Neither Roy Walker nor his wife, Evelyn Walker, or any of the immediate family may operate a marina or a similar business within five miles of this property.
“The owner-sellers are to furnish suitable surveys of the property as is required by law; County, State Health approval of water supply and sewerage disposal. The owner-sellers are to furnish the usual warranty deeds, mortgage guarantee of title, proration of taxes and all other assignment of licenses, permits, as have been mutually agreed upon between the parties in private discussions.
“The purchasers of the above described property are subject to and shall not be severed from the following agreement which is briefly as follows:
“Adjoining to the West of said property there is a similar footage on Terrys Cove measuring 190 feet plus one-half of the 40 feet road discussed above which is now vacant property but said property fronts on Terrys Cove with littoral rights and is approximately 1114 feet deep, more or less, shall be sold at a base price of $23,000 when sold.
“Walkers intend to construct a dwelling house which house would cost approximately $30,000 and Walkers are to keep records as to the costs of the house and also if and when constructed, it is estimated that a boat slip will cost about $20,000 and records of the costs are to be kept by the Walkers and at a time to be *268 hereinafter specified, the executors, heirs and assigns are to have the option to purchase said property for the figures named which are estimated to total about $75,000, at such time Walkers choose to sell said property, when the Walkers decide to move from said property for any reason or at the time of their deaths.
“The terms of the sale of the vacant lot are to be agreed upon in a reasonable, friendly, fair, just and legal way, all parties dealing in a spirit of mutual trust and confidence and to their mutual benefits.
“An undivided one-half interest is to be conveyed to Wendell Lee Haddox and Ilia Verne Haddox, husband and wife, with right of survivorship, 4730 Fawn Grove Road, Pylesville, Maryland 21132, telephone, 301 836 1491 and an undivided one-half interest to James Bedford Brewer and Betty Delores Brewer, husband and wife with right of survivorship, 436 S. Maine Street, Monroe, Ohio 45050, telephone 513 539 7488.
“The consideration for the option to buy the vacant property and the marina property and Walkers dwelling house is to be a total of $150,000.
“The Greater Miss. Life Ins. Co. of Meridian, Miss., Cliff Watts, president and Mr. Poole, secretary, telephone 601-693-1711, have a first mortgage on said property which is approximately $29,000 and the purchasers agree to assume and pay the balance due on said property, the exact amount which is to be determined at the time of closing and is to be paid according to the terms of said mortgage.
“Upon the signing of this Memorandum, the purchasers are giving Walkers $66,000 as soon as this transaction can be closed and $10,000 as earnest money as down payment and $20,000 more or less, which is owed to Greater Miss. Life Insurance Company by assuming and making payments under said mortgage and the difference of approximately $27,000 is to be paid at the time of closing or as soon as possible which is anticipated to be within the next 60 days.
“After these payments, there will be a balance of $84,000 which is to be paid by a second mortgage on said property due and payable under a ten year period in monthly installments of $975.40 which includes interest at 7%.
“Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less the amount of one installment. Payments may be made at the Farmers & Merchants Bank, Foley, Alabama 36535.
“This agreement is binding upon the administrators, heirs, executors and assigns of all parties. It is agreed between all parties that this is a memorandum drawn on short notice which is intended to outline the basic agreement according to the discussion between the parties and all parties are acting in good faith and will proceed to do so in a regular course of business in such transactions.
“IN WITNESS WHEREOF, we have hereof set our hands and seals this the 1st day of February, 1974.”
The trial court entered the following summary judgment for the Haddoxes:
“This cause coming on to be heard on January 8,1987, on the Plaintiffs Motion for Summary Judgment and Motion to Restrict Trial by Jury and Defendants’ Motion for Summary Judgment, and arguments having been presented, the Court finds as follows:
“That the ‘Memorandum’ dated February 1, 1974, and attached as Exhibit A to the Plaintiff's Complaint, signed by the Plaintiff and her husband, Wendell Lee Haddox, and the Defendants, which Memorandum the Plaintiff has asked the Court to construe, states in its first paragraph that ‘this is a preliminary outline of a transaction to be closed with the formal legal documents as soon as convenient and within the next sixty days or less.’;
“That no instruments were ever executed between the Plaintiff and Defendants concerning an option to purchase the real property that was described in the ‘Memorandum’;
“That no option to purchase the real property described in the Plaintiff’s Com *269 plaint exists between the Plaintiff and the Defendants;
“NOW, THEREFORE, it is ORDERED, ADJUDGED and DECREED that the Plaintiff’s Motion for Summary Judgment is hereby denied and the Defendants’ Motion for Summary Judgment granted ... against the Plaintiff.”
The trial court did not err in construing the “memorandum” as including only an “agreement to agree,” not an option contract. Option contracts are to be strictly construed, and any ambiguities are to be construed against the drafter. Colonial Baking Co. v. Pine Dale, Inc., 436 So.2d 856 (Ala.1983). The Haddoxes had an attorney draft the “memorandum” without the Walkers being present. The terms expressed in the “memorandum” leave such uncertainty as to the terms of the purported option, and the “memorandum” so plainly indicates an intent to later agree on the terms of an option, that the trial court cannot be held to have erred in holding that no option contract exists. “[Agreements to later agree are not enforceable.” Clanton v. Bains Oil Co., 417 So.2d 149, 151 (Ala.1982), quoting Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190 (1943).
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.