The plaintiffs, Keelboat Concepts, Inc., and F. Michael Rickels, petitioned this Court for a writ of certiorari in this declaratory-judgment action. They requested that this Court review the judgment of the Court of Civil Appeals affirming, without an opinion, the trial court's judgment for the defendants, C.O.W., Inc., and Joseph C. Bonner. KeelboatConcepts, Inc. v. C.O.W., Inc. (No. 2030174, October 8, 2004), 921 So.2d 477 (Ala.Civ.App. 2004) (table). We reverse and remand.
 Facts and Procedural History
The dispute in this case arises from a provision in a franchise agreement giving the franchisee the option to renew the franchise agreement. On August 1, 1983, C.O.W., Inc., purchased a franchise for a "Cock of the Walk" catfish restaurant from Cock of the Walk, Inc., which owned the franchise system. Bonner was the majority shareholder in C.O.W., Inc. The restaurant, located in Mobile, opened for business on January 4, 1984, and Bonner ran the day-to-day operations of the restaurant. The franchise agreement between Cock of the Walk, Inc. (the franchisor), and C.O.W., Inc. (the franchisee), contained the following renewal provisions:
 "A. Except as otherwise provided in this Franchise Agreement, the term of this Franchise Agreement shall be for a period of twenty (20) years, which period shall commence from the date of commencement of operations of the `Cock of the Walk' Catfish Restaurant at the location as set forth in Exhibit `A' attached.
 "B. Franchisee may, at its option, renew this Franchise Agreement for one additional period of twenty (20) years, provided that at the time of renewal:
 "1. Franchisee gives Franchisor written notice of such election to renew not less than twelve (12) months nor more than eighteen (18) months prior to the end of the primary term."
(Emphasis added.) Because the restaurant opened for business on January 4, 1984, the parties concede that the agreement required Bonner to give notice sometime during the six-month period between July 3, 2002, and January 3, 2003, that he was exercising the option to renew.
In 1991, Bonner and Rickels decided to purchase the "Cock of the Walk" franchise system from Cock of the Walk, Inc. They formed a new corporation, Keelboat Concepts, Inc. ("Keelboat"), and they purchased all of the assets in the "Cock of the Walk" franchise system from Cock of the Walk, Inc.[2] The two operated Keelboat and the franchise system together for approximately two years. Bonner also continued to operate the Mobile "Cock of the Walk" catfish restaurant franchise during this time.
In 1993, Bonner and Rickels decided that Rickels would purchase all of Bonner's interest in Keelboat. On April 28, *Page 924 
1993, Bonner and Eickels executed a "Share Purchase Agreement" under which Bonner transferred all of his stock in Keelboat to Rickels. As consideration for the purchase, the 1983 franchise agreement for the Mobile franchise location was amended to provide that Bonner would pay 0% in royalty fees for the remainder of the term of the franchise agreement as opposed to the 3% fee required by the original franchise agreement. In addition, the amended franchise agreement provided that Bonner would pay a 1% royalty fee to Keelboat during the second 20-year period if he decided to exercise the option to renew the franchise agreement under the renewal provision set out in the original agreement.
On January 22, 2003, Bonner sent Rickels written notice that he was exercising the option to renew the franchise agreement for an additional 20 years. However, the terms of the franchise agreement required Bonner to send Rickels written notice of his election to renew between July 3, 2002, and January 3, 2003. The parties conceded at trial that Bonner failed to give written notice of his election to exercise the option to renew within the time required under the franchise agreement. On January 30, 2003, Rickels sent a letter to Bonner indicating that January 3, 2003, was the last date upon which notice of his election to renew could have been timely given, that the agreement had not been validly renewed, and that the franchise agreement had been terminated.
On April 29, 2003, Rickels and Keelboat sued Bonner and C.O.W., Inc., seeking a declaratory judgment as to the rights of the parties. Rickels and Keelboat sought a declaration that the franchise agreement had expired and that Bonner had failed to give timely notice of his election to renew. C.O.W., Inc., and Bonner answered and filed a counterclaim against Keelboat and Rickels, arguing that although the notice of renewal was not timely, the notice was nevertheless effective to renew the franchise agreement.
A bench trial was held on October 15, 2003, and the trial court entered a judgment in favor of Bonner and C.O.W., Inc. The trial court held that the evidence did not indicate "an intent of the parties to strictly adhere to [the] terms" of the franchise agreement, that "time was not of the essence," and that "the language of the [Franchise] Agreement itself, and the conduct of the parties since 1983, indicate that no more than substantial performance of obligations under the [Franchise] Agreement was required." Therefore, the trial court held that although Bonner exercised the option to renew after the option had expired, the renewal was effective to renew the franchise agreement for an additional 20 years.
Rickels and Keelboat appealed to this Court, and the case was transferred to the Court of Civil Appeals pursuant to Ala. Code 1975, § 12-2-7(6). The Court of Civil Appeals affirmed the decision of the trial court, without an opinion. KeelboatConcepts, Inc. v. C.O.W., Inc. (No. 2030174, October 8, 2004), 921 So.2d 477 (Ala.Civ.App. 2004) (table). Rickels and Keelboat then petitioned this Court for a writ of certiorari. This Court granted the petition for the writ of certiorari to review the issue whether the terms of the renewal option in the franchise agreement should be strictly enforced because time is of the essence in an option contract. We decide that the terms of the renewal option should be strictly enforced and we therefore reverse and remand.
 Standard of Review
"Typically, when a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will *Page 925 
not be reversed unless the judgment is palpably erroneous or manifestly unjust." Philpot v. State, 843 So.2d 122,125 (Ala. 2002). "`However, where the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the court's judgment carries no presumption of correctness.'" Alabama RepublicanParty v. McGinley, 893 So.2d 337, 342 (Ala. 2004) (quotingAllstate Ins. Co. v. Skelton, 675 So.2d 377, 379
(Ala. 1996)). Questions of law are reviewed de novo. AlabamaRepublican Party, 893 So.2d at 342.
 Discussion
"We have stated before that time is of the essence in an option contract unless it is expressly stated otherwise."Allen v. Stone, 579 So.2d 1316, 1318 (Ala. 1991) (citing Colonial Baking Co. of Alabama v. Pine Dale,Inc., 436 So.2d 856, 858 (Ala. 1983) ("Time is always of the essence in an option contract unless expressly stated otherwise.")). See also Murphy v. Schuster Springs LumberCo., 215 Ala. 412, 415, 111 So. 427, 429 (1927) ("This is in accord with the generally recognized principal that in option contracts, unless expressly negatived, time is always of the essence of the contract."). "` The period of time within which an option is to be exercised is an inherent ingredient; and, unlike a contract which calls for no stated time for performance, the period of time in the case of an option is of the essence of the agreement.'" Jackson v. L.D. McReynolds,Inc., 430 So.2d 873, 875 (Ala. 1983) (quoting NationalSec. Ins. Co. v. Stewart, 43 Ala.App. 274, 277,188 So.2d 774, 775 (1965)). "Option contracts are to be strictly construed, and any ambiguities are to be construed against the drafter." Haddox v. Walker, 522 So.2d 266, 269
(Ala. 1988) (citing Colonial Baking, 436 So.2d at 858).
The parties agree that the franchise agreement in this case contained an option provision allowing Bonner to renew the franchise agreement for an additional 20 years. It is also undisputed that Bonner failed to exercise the option within the six-month period stipulated by the franchise agreement. The right to exercise the option expired on January 3, 2003; Bonner sent his notice of renewal on January 22, 2003. Because time is of the essence in an option contract and because option contracts are to be strictly construed, the notice of renewal sent by Bonner on January 22, 2003, was not effective to renew the franchise.[3]
Bonner and C.O.W., Inc., argue that the rule that time is of the essence in an option contract should not be strictly applied in this case. They correctly note that this Court has recognized certain factual situations in which the optionee may be excused from timely performance in exercising the option under an option contract. However, as explained below, the facts of this case do not fall within any of those recognized exceptions.
In Murphy, the parties entered into a contract for the sale of standing timber. 215 Ala. at 414, 111 So. at 428. The contract contained an option to renew that had to be exercised within a specified time period, but the optionee failed to allege sufficiently in his complaint that he had exercised the option within the time provided under the contract. Although the optionee failed sufficiently to allege that he *Page 926 
had timely exercised the option, this Court held that the optionor had waived the right to timely performance of the option because the optionor had failed to object to the late notice. Murphy, 215 Ala. at 415-16, 111 So. at 430. The Court stated that "with respect to the timeliness of the tender, if no objection is made on that ground, but only on some other, the default as to time is held to be waived."Murphy, 215 Ala. at 416, 111 So. at 430. See alsoStewart, 43 Ala.App. at 274, 188 So.2d at 775 (rejecting the optionee's argument that the optionor waived the right to timely exercise of an option).
The doctrine of waiver, however, does not apply to the facts of this case. In a letter sent to Bonner soon after he attempted to exercise the option to renew the franchise agreement, Rickels objected to Bonner's attempt to exercise the option to renew on the basis that the time period for renewing the option had expired. The basis of Rickels's complaint was that Bonner failed to exercise the option in a timely manner. Rickels and Keelboat subsequently filed this action seeking a judgment declaring that Bonner had failed to give timely notice of his election to renew the franchise agreement. Nothing in the record indicates that Rickels either failed to object to Bonner's untimely attempt to exercise the option or that Rickels waived the timely exercise of the option.
This Court has also held that an optionee is excused from timely performance under an option contract when the optionee's failure to exercise the option within the time required by the contract was a direct result of the optionor's conduct. InJackson, the parties entered into a lease agreement that contained an option to purchase property. 430 So.2d at 874. To exercise the option, the lessee had to provide written notice to the lessor and had to close on the property before the expiration of the lease term. The lessee was unable to obtain the financing necessary for closing because of an outstanding lien on the property. The lien on the property was eventually cleared by the lessor, but the lessor then refused to sell the property. The lessor argued that time is of the essence in an option contract and that the lessee had failed to fulfill the requirements necessary to exercise the option because the lessee did not close on the transaction by the lease-expiration date.
This Court held that "[w]hile we have no disagreement with [the] well-settled axiom of jurisprudence" that time is of the essence in an option contract, the failure of the lessee to exercise the option within the required time "rest[ed] upon [the lessor]" and "was a direct result of [the lessors] failure to present for examination a good and marketable title."Jackson, 430 So.2d at 876. Thus, the rule that time is of the essence in an option contract did not apply to the facts of this case. Jackson, 430 So.2d at 876.
The facts of Hoik v. Snider, 294 Ala. 318, 319,316 So.2d 675, 675 (1975), are similar to the facts ofJackson. In Hoik, upon which Bonner and C.O.W., Inc., rely, the parties entered into an agreement for the purchase of real estate. The buyers then contacted the seller's real estate agent to complete the transaction. The buyers executed a contract for the sale of the property and delivered the down payment to the agent. The agent then attempted to contact the seller to arrange a time for the closing. The seller's agent sent the seller a letter by certified mail attaching a copy of the contract and suggesting a time for the closing. However, the letter was unclaimed and was returned to the agent. The agent then sent two more certified letters to the seller; these letters were also unclaimed and returned to the agent. The purchasers were unable *Page 927 
to complete the transaction, so they sued for specific performance. On appeal, the seller argued that because the agreement was an option contract, time was of the essence, and the buyers were not entitled to specific performance because they failed to complete the transaction within the required time. This Court rejected that argument, stating that "[t]ime is not the essence of a contract unless it is expressly stated by the parties or unless it naturally follows from the circumstances of the particular case." Hoik,294 Ala. at 321, 316 So.2d at 677 (citing McFadden Bro. v.Henderson, 128 Ala. 221, 29 So. 640 (1900)).
Bonner and C.O.W., Inc., argue that this holding supports their position that time was not of the essence because the franchise agreement did not explicitly state that time was of the essence.[4] However, the Court in Hoik went on to state that with an option contract, "time is ordinarily ofthe essence and should be strictly construed" and noted " `the generally recognized principal that in option contracts, unless expressly negatived, time is always of the essence. . . .' "Hoik, 294 Ala. at 322, 316 So.2d at 678 (quotingMurphy, 215 Ala. 412, 415, 111 So. 427, 429). The Court noted that the seller "overlooked] the fact that . . . it was her agent who sent her the letters on May 12, June 2, and June 19, 1972, enclosing the contract and agreement for [her] approval" and the fact that "[the buyers] have been ready, willing, and able to perform on their part since the date of the exercise of the option, and they are entitled to have specific performance." Hoik, 294 Ala. at 321, 316 So.2d at 677. The buyer's failure to exercise the option effectively was the direct result of the seller's failure to respond to the attempts to set a date for closing. Therefore, the Court held that time was not of the essence where the optionee's failure to exercise the option was the result of the optionor's conduct.Hoik, 294 Ala. at 322, 316 So.2d at 678. See alsoHicks v. Dunn, 622 So.2d 914, 917 (Ala. 1993) ("This Court held that the right of the purchaser to exercise the option `was not subject to be defeated by any voluntary act on the part of defendant, whether done with intent to defeat the exercise of the option or not.' [Holmes v. Myles, 141 Ala. 401,405, 37 So. 588, 589 (1904)]. Specific performance was compelled because the purchaser `acted with due promptness in attempting to communicate to [the owner] his acceptance of the option.'Id.").
Under the facts of this case, there is no indication that Bonner failed to exercise the option to renew because of Rickels's actions, and there is no evidence to indicate that Rickels took any action to prevent Bonner from exercising the option to renew within the required six-month period. Therefore, the facts of this case do not support Bonner's argument that strict compliance with the terms of the option provision should not be enforced under the exception set out inJackson and Hoik.
The trial court in the instant case held that although Bonner failed to give timely *Page 928 
notice as required by the franchise agreement, Bonner nevertheless effectively exercised the option. The trial court stated:
 "The evidence revealed little about the Franchise Agreement indicating an intent of the parties
to strictly adhere to its terms . . . [and] that time was not of the essence in the performance of the obligations of the parties under the Franchise Agreement. Both the language of the Agreement itself, and the conduct of the parties since 1983, indicate that no more than substantial performance of obligations under the Agreement was required. The Court, therefore, finds that Bonner's notice to Rickels substantially complied with the Franchise Agreement and was effective to renew the franchise for a new term of 20 years."
(Emphasis added.)
The trial court examined the "intent" of the parties in holding that strict adherence with the terms of the franchise agreement was not required. However, it is well settled under Alabama law that "`[t]he words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract.'" Ex parteAwtrey Realty Co., 827 So.2d 104, 107-08 (Ala. 2001) (quoting Smith v. Citicorp Person-To-Person Fin. Ctrs.,Inc., 477 So.2d 308, 310 (Ala. 1985)). "Where a contract, by its terms, is plain and free from ambiguity, there is no room for construction and the contract must be enforced as written."BõWing Office Sys., Inc. v. Johnson, 744 So.2d 915, 918
(Ala.Civ.App. 1999) (citing Ex parte Conference America,Inc., 713 So.2d 953, 956 (Ala. 1998), and Ex parte SouthCarolina Ins. Co., 683 So.2d 987, 989 (Ala. 1996)). In addition, option contracts are to be strictly construed.Haddox, 522 So.2d at 269; Colonial Baking,436 So.2d at 858. The option provision in this case clearly required that Bonner exercise the option by providing written notice to Rickels between July 3, 2002, and January 3, 2003. Because the option provision contained no ambiguity, the trial court erred in holding that the terms of the option should not be strictly construed and in looking outside the terms of the franchise agreement itself to determine the intent of the parties.
The trial court also stated that the evidence indicated that only "substantial performance of obligations" was required, and, therefore, that "time was not of the essence in the performance of the obligations of the parties under the Franchise Agreement." Under the doctrine of substantial performance, "[w]here a contract is made for an agreed exchange of two performances, one which is to be rendered first, substantial performance of the first obligation, rather than exact or strict performance of the contract's terms, is sufficient to entitle the contractor to recover." 17A Am.Jur.2dContracts § 616 (2004). See also Bay CityConstr. Co. v. Hayes, 624 So.2d 1031, 1034 (Ala. 1993) (holding that the plaintiff was permitted to recover damages for breach of contract because, although he had not performed all of the obligations on his part under the contract, he had substantially performed the obligations).
The trial court's reliance on the equitable doctrine of substantial performance of obligations is misplaced because this is not a breach-of-contract case. If Bonner had never attempted to exercise the option, there would be no cause of action for breach of contract because he had no obligation to renew.See McGuire v. Andre, 259 Ala. 109, 114, 65 So.2d 185,189 (1953) (holding that an option to purchase "merely gives the right to purchase within a limited time without imposing any obligation to purchase"); Stewart v. Robertson, *Page 929 490 So.2d 13, 15 (Ala.Civ.App. 1986) ("In a contract to purchase and sell, a mutual obligation exists . . .; whereas, in an option to purchase, no binding obligation to purchase exists."). Despite the trial court's holding that "time was not of the essence in the performance of the obligations of the parties under the Franchise Agreement" (emphasis added) and thus "no more than substantial performance of obligations " was required (emphasis added), Bonner had no "obligation" to renew the franchise agreement; the renewal provision was an "option," not an "obligation." See McGuire,259 Ala. at 114, 65 So.2d at 189; Stewart, 490 So.2d at 15. Bonner and C.O.W., Inc., cite no authority for the proposition that "substantial compliance" is an exception to the rule that time is of the essence in an option contract, and the trial court erred in so holding.
Although the trial court explains its judgment in terms of the doctrine of substantial compliance, the trial court's judgment could also be construed as holding that Rickels waived the right to timely performance by not requiring Bonner to "strictly adhere" to other terms in the franchise agreement. Bonner argues that the evidence shows that he was not required to comply strictly with many of the provisions in the franchise agreement. For example, Bonner argues that Keelboat did not strictly enforce the franchise recipe requirements for the catfish seasonings and the coleslaw at the Cock of the Walk restaurant Bonner operated. Bonner frequently used his own recipes instead of the approved franchise recipes. In addition, Boner argues that Keelboat never required Bonner to strictly adhere to staff uniform requirements, and Bonner never required his employees to sign confidentiality agreements in accordance with the franchise agreement. Lastly, Bonner served Pepsi brand products; thus, he did not strictly comply with the requirement in the franchise agreement that Cock of the Walk restaurants serve Coca-Cola brand products. Keelboat argues that Bonner was required to comply strictly with the terms of the franchise agreement, and the record indicates that Rickels sent "countless letters" to Bonner asking him to comply with the terms of the franchise agreement. However, Bonner argues that these letters did not amount to a demand for strict compliance with the terms of the franchise agreement because, he says, the tone of the letters was "cordial" or friendly
Even if the trial court's holding, couched in terms of the "substantial performance" doctrine, is actually based on the doctrine of waiver, the facts do not support a finding that Rickels waived his right to timely performance.[5] As already noted, the record shows that Rickels promptly notified Bonner by letter that his renewal notice was ineffective because it was untimely. Cf. Murphy, 215 Ala. at 416, 111 So. at 430
(holding that the optionor waived the right to timely exercise of the option because the optionor failed to object on that ground). In addition, even if Rickels did not require Bonner to "strictly adhere" to certain terms of the franchise agreement, the agreement contained an anti-waiver provision, which provided:
 "No failure of Franchisor to exercise any power reserved to it in this Franchise Agreement or to insist upon compliance by Franchisee with any obligation or condition in this Franchise *Page 930 
Agreement, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Franchisor's right to demand exact compliance with the terms of this Franchise Agreement."
See, generally, Lynaum Funeral Home, Inc. v. Hodge,576 So.2d 169, 170-71 (Ala. 1991) (stating that the trial court did not err in holding that a landlord was not estopped from terminating a lease because of late rent payments even though the landlord had previously accepted rent payments after their due date because the lease contained an anti-waiver provision that expressly reserved the right to accept late rent payments without waiving his right to declare default). Therefore, under this anti-waiver provision, Rickels's failure to strictly enforce terms of the franchise agreement relating to the day-to-day operations of the restaurant could not amount to a waiver of the requirement that notice of the election to renew be timely given.
Bonner also argues that Mississippi law should apply in this case because the 1983 franchise agreement contained a choice-of-law provision stating that the "Franchise Agreement shall be interpreted and construed under the laws of the State of Mississippi. . . ." Rickels, however, argues that Alabama law applies in this case because the 1993 "Share Purchase Agreement," which also contained an amendment to the 1983 franchise agreement, stated that "it is the intention of the parties that the laws of the State of Alabama should govern the validity of this Agreement and the construction of its terms and the interpretation of the rights and duties of the parties." At the summary-judgment stage of this case, the parties disputed which state's law applied. However, the trial court did not rule on the motions for a summary judgment and did not make a ruling as to what state law applied in the case. Neither Bonner nor Rickels made this choice-of-law argument during the trial. In addition, at trial, no party moved the trial court to determine whether Mississippi law applied in the case, and Bonner did not cite any Mississippi caselaw during trial. The trial court's final order does not indicate what law was applied. However, even if Mississippi law applied in this case, the result would be the same. In Robinson v. Martel Enters., Inc.,337 So.2d 698, 702-04 (Miss. 1976), the Mississippi Supreme Court held:
 "`It is incumbent upon the optionee to exercise the option in the manner provided in the contract and, unless such requirements are waived, his failure to do so, or his attempt to exercise it in another manner, is inoperative to form a binding contract. . . .' [quoting Reynolds v. Maples, 214 F.2d 395, 398 (5th Cir.1954)].
 ". . . .
 "`As a general proposition, an option contract is of such a nature that time is generally regarded as of the essence thereof, even in equity.' [quoting 72 A.L.R.2d 1127 (1960)].
 ". . . .
 "As a general rule, time is of the very essence of an option contract. Poole v. McCarty, 229 Miss. 170, 90 So.2d 190 (1956); 17 Am.Jur.2d Contracts § 335 (1964). When the option contract calls for giving notice of the grantee's intention to exercise the option, a great majority of courts have held that this provision is of the essence, and that upon failure to give timely notice, the option expires. 72 A.L.R.2d 1127 (1960); 71 Am.Jur.2d, Specific Performance § 145 (1973).
 ". . . .
 ". . . [W]e have decreed strict compliance with the terms and provisions of option contracts. See Poole v. McCarty, *Page 931 229 Miss. 170, 90 So.2d 190 (1956). To allow [the optionee] to ignore such a notice requirement or substitute his own date and manner for giving notice of his intention to exercise his option is tantamount to this Court's making a different contract between the parties, which we cannot do."
See also Frazier v. Northeast Mississippi ShoppingCtr., Inc., 458 So.2d 1051, 1055 (Miss. 1984) (holding that time is of the essence in the exercise of an option contract);Poole v. McCarty, 229 Miss. 170, 175-76, 90 So.2d 190,193 (1956) (`"The province of the courts in respect to contracts extends not a single step farther than the enforcement thereof as made by the parties, and the courts must be careful that they go no farther. . . .' . . . Time is of the very essence of an option and we are therefore of the opinion that the complainant was not entitled to specific performance of the contract as written, the option therein provided for having expired. . . .").
Bonner and C.O.W., Inc., cite Robinsonfor their argument that under Mississippi law, only option contracts involving an interest in land are governed by the rule that time is of the essence in an option contract. AlthoughRobinson does involve an option contract for the purchase of land, the Court in Robinson does not limit the application of the rule that time is of the essence with an option contract to option contracts for the purchase of land.
Bonner and C.O.W., Inc., also cite Christiansen v.Griffin, 398 So.2d 213, 216 (Miss. 1981), for the proposition that the "substantial performance" rule should apply in the case at bar. In Christiansen, the owner of a floral business wanted to sell the entire business, including the real property on which the business was located. The business owner entered into negotiations for the sale, but the parties discovered that the city business permit necessary for the operation of the floral business could not be transferred to the buyer. To avoid this problem, the parties entered into an "Employment Agreement" whereby the owner of the floral business "employed" the prospective purchaser to run the business. Under the agreement the prospective purchaser would operate the business and would pay a certain amount per month that would be applied to the purchase price. The parties also entered into an option contract giving the prospective purchaser the right to purchase the business, including the real estate. The purchaser-optionee had to exercise the option to purchase the business by providing notice of the intent to purchase by a certain date. The option to purchase could be renewed for seven successive one-year periods through written notice. The optionee did not provide notice that she was exercising the option until more than a year after the date required for the giving of such notice. The business owner initially agreed to complete the sale; however, he later objected to the sale on the ground that the optionee failed to give the required notice of the intent to renew the option period. The Mississippi Supreme Court held that the business owner had waived the right to timely performance of notice. The Court noted that the business owner had informed state tax commissioners that the optionee had already purchased the business, and he had written to the city planning board requesting that the permit be transferred to the optionee. In addition, the business owner initially had agreed to proceed with the transaction; therefore, he failed to object to the late renewal notice. Lastly, the business owner had already accepted a $10,000 down payment for the purchase along with monthly installment payments totaling $11,730. The Court held that this conduct of the business owner "clearly evidenced a waiver by *Page 932 
appellant of any pretended notice requirement of the contract."Christiansen, 398 So.2d at 216.
Contrary to Bonner's assertion, the Court inChristiansen does not apply, or even mention, the "substantial performance" rule. Rather, the Court applied the doctrine of waiver to hold that the optionor had waived the right to timely notice under the option contract. Like the caselaw in Alabama, the Christiansen case holds that the optionor may waive the timely notice requirement. However, as already discussed, the doctrine of waiver does not apply to the facts of this case.
 Conclusion
We conclude that the Bonner and C.O.W., Inc., did not effectively renew the franchise agreement because time was of the essence of the option contract and the renewal notice was not timely; thus, the trial court erred in ruling that Bonner's late notice of renewal was effective to renew the franchise agreement for an additional 20 years. We therefore reverse the judgment of the Court of Civil Appeals affirming the trial court's ruling, and we remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
LYONS, J., recuses himself.
[2] C.O.W., Inc., retained title to the real property in Mobile upon which the Cock of the Walk catfish restaurant was located.
[3] This case deals with an option contract that contains a limitation on the time within which to exercise the option. If an option agreement contains no time limitation, the option must be exercised "`within a reasonable time.'" Herring v.Prestwood, 379 So.2d 548, 551 (Ala. 1979) (quotingSmith v. Cleveland, 289 Ala. 401, 403,268 So.2d 14, 16 (1972)).
[4] The 1983 franchise agreement contained a provision stating that the franchisee was obligated "[t]o open the `Cock of the Walk' Restaurant . . . within four (4) months (one hundred twenty (120) days) from the date of this [franchise] Agreement, In addition, the parties also disputed whether this provision "carried over" to the amended franchise agreement the parties entered into in 1993. However, we do not need to resolve these issues here, because we granted certiorari review to determine whether the affirmance by the court of civil Appeals conflicts with the general rule that time is of the essence in an option contract unless otherwise specified.
[5] Although there may be a dispute as to whether Bonner was required to adhere strictly to the terms of the franchise agreement, there is no ore tenus presumption of correctness in favor of the trial court's judgment because the doctrine of substantial compliance, as a matter of law, does not apply in this case.