PER CURIAM.
C.O.W., Inc., and its owner, Joseph C. Bonner, appeal from a judgment as a matter of law entered in favor of attorney Marion A. Quina, Jr., and the law firm in which he is a partner, Lyons, Pipes & Cook, P.C. (Quina and Lyons, Pipes & Cook are hereinafter referred to collectively as “the legal-service providers”), in the underlying legal-malpractice action. The legal-service providers cross-appeal. We affirm the judgment of the trial court and dismiss the legal-service providers’ cross-appeal as moot.

*1118
Facts

C.O.W. entered into a franchise agreement with Keelboat Concepts, Inc., pursuant to which C.O.W. purchased the right to operate a “Cock of the Walk” catfish restaurant in Mobile. The franchise agreement contained a choice-of-law provision, which stated that Mississippi law would govern the construction of the agreement in the case of a dispute. Under the terms of the franchise agreement, C.O.W. had the option to renew the franchise agreement at the end of the initial contract period, provided, among other things, (1) that C.O.W. gave Keelboat written notice of renewal no earlier than July 3, 2002, and no later than January 3, 2003, and (2) that, at the time of renewal, C.O.W. paid Keelboat 50% of the then current initial franchise fee established by Keelboat. The undisputed evidence presented at the trial of this case establishes that C.O.W. did not provide a written notice of renewal during the period prescribed in the franchise agreement and did not pay Keelboat 50% of the then current initial franchise fee “at the time of renewal.”
C.O.W. alleges that its attorney, Quina, a partner in the firm of Lyons, Pipes & Cook, negligently failed to timely renew the franchise agreement. It is undisputed that Quina sent the notice of renewal to Keelboat after the expiration of the January 3, 2003, deadline for the renewal notice.
After receiving C.O.W.’s late notice of renewal, Keelboat informed C.O.W. that it was terminating the franchise agreement because it had not been timely renewed; C.O.W., however, continued to operate the restaurant. Consequently, Keelboat filed an action against C.O.W. requesting a judgment declaring that the franchise agreement had terminated (“the Keelboat declaratory-judgment action”). In its complaint for a declaratory judgment, Keel-boat alleged a number grounds for the issuance of such an order, any of which, standing alone, if proven, would have been sufficient grounds for the issuance of a judgment declaring that the franchise agreement had terminated. Among those grounds were the following:
1. That the notice of renewal was invalid because it was untimely under the renewal-option provision of the franchise agreement; and
2. that C.O.W.’s notice of renewal was ineffective because C.O.W. did not submit payment of 50% of the franchise renewal fee allegedly due simultaneously with its notice of renewal.
In addition, C.O.W. filed a cross-claim for a declaratory judgment seeking, among other things, a judgment declaring that C.O.W.’s untimely exercise of its option to renew was effective to renew the franchise agreement. All the above claims and issues were tried in the Keelboat declaratory-judgment action. After a bench trial, the trial court entered judgment rejecting all Keelboat’s arguments and declaring that C.O.W.’s right to operate the Cock of the Walk restaurant in Mobile had not terminated.
Keelboat appealed to the Court of Civil Appeals, which affirmed the trial court’s judgment without an opinion. Keelboat Concepts, Inc. v. C.O.W., Inc. (No. 2030174, Oct. 8, 2004), 921 So.2d 477 (Ala.Civ.App.2004) (table). Keelboat then petitioned this Court for a writ of certiorari. We granted the writ only as to the issue “whether the affirmance by the Court of Civil Appeals conflicts with the general rule that time is of the essence in an option contract unless otherwise specified.” Ex parte Keelboat Concepts, Inc., 938 So.2d 922, 927 n. 4 (Ala.2005). We concluded “that ... C.O.W., Inc., did not effectively renew the franchise agreement because time was of the essence of the option con *1119 tract and the renewal notice was not timely”; thus, we reversed the judgment of the Court of Civil Appeals and remanded the case. 938 So.2d at 932. The Court of Civil Appeals subsequently entered an order directing that, “[i]n compliance with the Supreme Court’s opinion, the judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with the Supreme Court’s opinion.” Keelboat Concepts, Inc. v. C.O.W., Inc., 938 So.2d 932 (Ala.Civ.App.2006).

Procedural History

On December 29, 2004, C.O.W. and Bonner filed the underlying legal-malpractice action against the legal-service providers pursuant to Alabama’s Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975 (“the ALSLA”), in the Mobile Circuit Court.
The case was eventually tried before a jury. On the seventh day of trial, C.O.W. and Bonner rested their case. The legal-service providers then moved for a judgment as a matter of law. The trial court held a hearing on the motion. In that hearing, the legal-service providers argued, among other things, that Bonner had no standing to bring the action against the legal-service providers because, in rendering the legal services that allegedly fell below the standard of care, Quina was representing C.O.W., not Bonner. The trial court granted the motion for a judgment as a matter of law on this issue and dismissed Bonner’s claims.
The legal-service providers further argued that they were entitled to judgment as a matter of law as to C.O.W.’s claims against them, because, they said, C.O.W. had not presented evidence that, but for the fact that the renewal was untimely, C.O.W. would have succeeded in renewing the franchise agreement. Specifically, just as Keelboat had argued in the Keelboat declaratory-judgment action, the legal-service providers argued that, even if the notice of renewal had been timely, C.O.W. did not pay 50% of the franchise fee allegedly due at the time of renewal. After listening at length to the parties’ arguments with regard to the “but for” causation issue, the trial court entered a judgment as a matter of law for the legal-service providers on the claims against C.O.W. On October 24, 2007, C.O.W. and Bonner filed a notice of appeal from the judgment of the trial court.
On November 5, 2007, the legal-service providers filed a notice of appeal, arguing that they were entitled to a judgment as a matter of law regardless of the merits of C.O.W. and Bonner’s appeal. According to the legal-service providers, C.O.W. and Bonner did not present valid expert testimony to prove that the legal-service providers had breached the applicable standard of care.

Standard of Review

“When reviewing a ruling on a motion for a JML [judgment as a matter of law], this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced *1120 substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala.2003).

Analysis

Appeal (case no. 1070187)

A. Whether the trial court erred in determining that Bonner lacked standing.

Bonner has submitted no argument to this Court challenging the dismissal of his claims against the legal-service providers based on a lack of standing. Therefore, we affirm the judgment as a matter of law for the legal-service providers as to Bonner’s claims against them. Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (“While we attempt to avoid dismissing appeals or affirming judgments on what may be seen as technicalities, we are sometimes unable to address the merits of an appellant’s claim when the appellant fails to articulate that claim and presents no authorities in support of that claim.”).
B. Whether the trial court erred, in entering a judgment as a matter of law on C.O.W.⅛ claims against the legal-service providers.
1. The Keelboat declaratory-judgment action and the doctrine of collateral estoppel.
To prevail in a legal-malpractice action, the plaintiff must prove that, but for the attorney’s negligence, the legal matter concerning which the attorney is alleged to have been negligent would have been resolved more favorably to the plaintiff. Pickard v. Turner, 592 So.2d 1016, 1019 (Ala.1992). To meet this burden, the plaintiff must prove (1) that, in the absence of the alleged malpractice, the plaintiff would have been entitled to a more favorable result in the legal matter concerning which the attorney is alleged to have been negligent, and (2) that the attorney’s negligence in fact caused the outcome of the legal matter to be less favorable to the plaintiff than the outcome would have been in the absence of the alleged malpractice. Pickard, 592 So.2d at 1020 (“‘Generally, actionable [legal] malpractice cannot be established in the absence of a showing that the attorney’s wrongful conduct has deprived the client of something to which he would otherwise have been entitled.’ [7A C.J.S. Attorney and Client § 255 at 462 (1980).] A lawyer cannot be expected to achieve impossible results for a client.”); Hall v. Thomas, 456 So.2d 67, 68 (Ala.1984) (“A claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the case would have been different.” (citing Mylar v. Wilkinson, 435 So.2d 1237 (Ala.1983))).
Thus, in this case, to withstand the legal-service providers’ motion for a judgment as a matter of law, not only did C.O.W. bear the burden of proving that its attempt to renew the franchise would have in fact had a more favorable result but for the legal-service providers’ negligence in failing to timely renew the franchise, but also that, but for the fact that the renewal notice was untimely, it was legally entitled to renew the franchise. See Pickard, 592 So.2d at 1020. C.O.W. argues that, because C.O.W. obtained a favorable judg *1121 ment on those issues in the Keelboat declaratory-judgment action, C.O.W. would have been legally entitled to renew the franchise agreement despite C.O.W.’s failure to pay the franchise fee. C.O.W. points out that the only basis for the reversal of the trial court’s judgment in favor of C.O.W. in the Keelboat declaratory-judgment action was this Court’s opinion holding that the notice of renewal was ineffective because it was untimely.
C.O.W. argues that the doctrine of collateral estoppel bars the legal-service providers from challenging the legal authority it contends was established in Ex parte Keelboat Concepts. Collateral estoppel is an equitable defense that bars a party from relitigating an issue that has been resolved in an earlier ease. Ex parte Flexible Prods. Co., 915 So.2d 34, 45 (Ala.2005). Collateral estoppel applies when the following elements are shown:
“(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (8) that resolution of the issue was necessary to the prior judgment; and (4) the same parties.”
Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 726 (Ala.1990).
When this Court decided Ex parte Keel-boat Concepts, it reversed the judgment of the Court of Civil Appeals and remanded the case in its entirety. Although this Court had granted certiorari review only as to one of the issues the Court of Civil Appeals had decided in favor of C.O.W. and Bonner, and although it was only on the basis of that issue that this Court reversed the judgment of the Court of Civil Appeals, that reversal necessarily reversed the entire judgment of the Court of Civil Appeals. When, in compliance with this Court’s remand order, the Court of Civil Appeals in turn reversed the trial court’s judgment, it necessarily reversed the trial court’s judgment in its entirety.
In Van Schaack v. AmSouth Bank, N.A., 586 So.2d 192 (Ala.1991), a lower court’s judgment had been reversed, and this Court rejected a subsequent attempt by a party to rely upon a holding in the lower court’s judgment that was not the reason for the reversal. As this Court explained, “well-settled in the law of Alabama is the principle that a judgment is a legal entity — a single unit — the reversal of which annuls it in its entirety and vacates all rulings that are contained within it.” 586 So.2d at 195 (quoting Ex parte Riley, 464 So.2d 92, 93-94 (Ala.1985)) (emphasis omitted).
Thus, C.O.W. has not met its burden, as the party seeking the benefit of the doctrine of collateral estoppel, to demonstrate the existence of a final judgment adjudicating any issue other than that the notice of renewal was invalid because it was untimely. Thus, the doctrine of collateral estop-pel does not prevent the legal-service providers from relitigating issues decided by the trial court in the Keelboat declaratory-judgment action before its original judgment was reversed on another issue.

2. The effect of C.O.W.’s failure to pay the initial franchise fee.

A plaintiff in a legal-malpractice case must prove “the same basic elements as in a negligence action: duty, breach, proximate cause, and damages.” Pickard, 592 So.2d at 1019 (citing Moseley v. Lewis & Brackin, 533 So.2d 513, 515 (Ala.1988)). Bonner testified that he telephoned Quina on December 13, 2003, and told him to send the letter of renewal. Bonner testified that, at that time of the telephone call, although he could not recall the precise day in early January 2003 when the renewal deadline would expire, he told Quina that “the letter of renewal needed to be *1122 sent by the first of the year.... [T]he dates that were talked about were January the 3rd and January the 4th.” It is undisputed that Quina did not send Keelboat a letter of renewal until January 20, 2003. It is further undisputed that, if Bonner indeed informed Quina of the deadline for renewal and instructed Quina to draft the renewal notice in anticipation of that deadline,[1] Quina would have breached a duty to timely prepare the notice of renewal. It is undisputed that Keelboat did not accept C.O.W.’s notice of renewal, citing as its reason for not accepting it the untimeliness of C.O.W.’s attempt to renew. It is undisputed that this Court held in Ex parte Keelboat that C.O.W.’s notice of renewal was ineffective because it was untimely. Finally, it is undisputed that, because C.O.W. was unable to prevail in its attempt to renew the franchise, C.O.W. lost the right to the franchise and the ability to profit from it.
However, because this is a legal-malpractice action, in addition to duty, breach, proximate cause, and damages, C.O.W. bore the burden at trial of proving that, had the notice of renewal been timely, C.O.W. would have had a legal right to a renewal of the franchise. Pickard, 592 So.2d at 1020 (“ ‘Generally, actionable [legal] malpractice cannot be established in the absence of a showing that the attorney’s wrongful conduct has deprived the client of something to which he would otherwise have been entitled.’ [7A C.J.S. Attorney and Client § 255 at 462 (1980).] A lawyer cannot be expected to achieve impossible results for a client.”). The legal-service providers argue that the untimeliness of the renewal notice was not the only reason C.O.W. had no legal right under the franchise agreement to renew. According to the legal-service providers, C.O.W. failed to comply with a number of other requirements in the renewal-option provision that were necessary for C.O.W. to exercise the option.
According to the legal-service providers, one of the requirements set forth in the renewal-option provision was that, to renew, C.O.W. was required to have paid, at the time of renewal, 50% of the then current initial franchise fee. The uncontra-dicted evidence presented in C.O.W.’s case-in-chief demonstrated that C.O.W. did not pay 50% of the initial franchise fee at the time of renewal. Therefore, the legal-service providers argue, Keelboat would have been justified in rejecting C.O.W.’s attempt to renew even had it been timely.[2]
The original renewal-option provision, contained in Paragraph IV.B. of the franchise agreement, stated:
“B. [C.O.W.] may, at its option, renew this Franchise agreement for one additional period of twenty (20) yeai’S, provided that, at the time of renewal :[3]
“1. [C.O.W.] gives [Keelboat] written notice of such election to renew not less than twelve (12) months nor *1123 more than eighteen (18) months pri- or to the end of the primary term.
“2. [C.O.W.] executes and is obligated to perform under [KeelboatJ’s then current standard form of Franchise agreement ....
[[Image here]]
“6. [C.O.W.] shall have paid to [Keel-boat] fifty percent (50%) of the then current initial Franchise fee.”
(Emphasis added.)
A 1993 amendment to the renewal-option provision in the franchise agreement states:
“Paragraph PV(B)l-2 is amended to read as follows:
“B. [C.O.W.] and/or its successors and assigns may, at their option, renew this Franchise agreement for one additional period of twenty (20) years, provided that at the time of the renewal:
“1. [C.O.W.] gives [Keelboat] written notice of such election to renew not less than twelve (12) months nor more then eighteen (18) months pri- or to the end of the primary term.
“2. [C.O.W.] executes and is obligated to perform under a Franchise agreement in the form of the current Franchise agreement. At the time that the option is exercised, the monthly gross sales royalty shall he set at one percent, and there shall be no monthly advertising or royalty on gross sales.”
(First emphasis added; remaining emphasis original to indicate additions.)
In its argument on appeal, C.O.W. does not discuss the construction of Paragraph IV.B.6. of the franchise agreement, which conditioned C.O.W.’s right to renew on C.O.W.’s having paid 50% of the initial franchise fee at the time of renewal. However, C.O.W.’s brief does quote the order of the trial court in the Keelboat declaratory-judgment action, which judgment was later reversed by the Court of Civil Appeals on other grounds. Keelboat Concepts, Inc. v. C.O.W., Inc., 938 So.2d 932; see also Ex parte Keelboat, 938 So.2d 922. The trial court in the Keelboat declaratory-judgment action stated:
“The Court finds that the 1993 amendment of the Franchise agreement set forth all of the payments [C.O.W.] was required to make to [Keelboat] on the renewal of the term of the Franchise Agreement. Under that amendment, [C.O.W.] would owe a one percent (1%) royalty fee to [Keelboat] during the new term of the franchise, which the Court finds would be due only on sales made by [C.O.W.] after the beginning of the new term on January 4, 2004. [C.O.W.] would not be required to pay any advertising royalty. And [C.O.W.] would be entitled to renew ‘in the form of the current Franchise agreement.’ Nowhere in the amendment is [C.O.W.] required to pay any other kind of ‘franchise fee’ to [Keelboat]. Therefore, the Court finds that [C.O.W.] is not required to pay [Keelboat] any ‘franchise fee’ on renewal of the term of the Agreement, other than the one percent (1%) royalty fee.”
This analysis is inconsistent with the express language of the renewal-option provision in the franchise agreement. See Ex parte Keelboat, 938 So.2d at 925 (“ ‘Option contracts are to be strictly construed ....’” (quoting Haddox v. Walker, 522 So.2d 266, 269 (Ala.1988), citing in turn Colonial Baking Co. of Alabama v. Pine Dale, Inc., 436 So.2d 856, 858 (Ala.1983))). As we observed in Ex parte Keelboat:
“[I]n Robinson v. Martel Enters., Inc., 337 So.2d 698, 702-04 (Miss.1976), the Mississippi Supreme Court held:
*1124 “ ‘ “It is incumbent upon the optionee to exercise the option in the manner provided in the contract and, unless such requirements are waived, his failure to do so, or his attempt to exercise it in another manner, is inoperative to form a binding contract ...[quoting Reynolds v. Maples, 214 F.2d 395, 398 (5th Cir.1954) ].
[[Image here]]
“ ‘. [W]e have decreed strict compliance with the terms and provisions of option contracts. See Poole v. McCarty, 229 Miss. 170, 90 So.2d 190 (1956).’”
938 So.2d at 930-31 (emphasis added).
The terms of Paragraph IV.B.6 of the renewal-option provision are clear and unambiguous: the provision gave C.O.W. the option to renew the franchise agreement “provided that, at the time of renewal: ... [C.O.W.] shall have paid to [Keelboat] fifty percent (50%) of the then current initial Franchise fee.” The 1993 amendment to the franchise agreement clearly and unambiguously provided that, with regard to the renewal-option provision, it was amending only “Paragraph IV(B)(l)-(2).” It did not purport to amend other subparagraphs in the renewal-option provision, including Paragraph IV.B.6, the provision requiring payment by C.O.W. of 50% of the initial franchise fee at the time of renewal. The trial court’s conclusion in the Keelboat declaratory-judgment action to the effect that the amendment modified the requirements of Paragraph IV.B.6 is inconsistent with the express terms of the renewal-option provision. We therefore reject C.O.W.’s reliance on the trial court’s construction in the Keelboat declaratory-judgment action of the terms of the renewal-option provision as persuasive authority in this legal-malpractice action in construing the portion of the renewal-option provision regarding payment of 50% of the initial franchise fee. Instead, we hold that the express terms of renewal-option provision required payment by C.O.W. of 50% of the initial franchise fee at the time of renewal as a condition precedent to the renewal of the franchise agreement.
Accordingly, pursuant to the plain terms of the renewal-option provision, C.O.W.’s attempt to renew the franchise agreement without paying 50% of the initial franchise fee at the time of renewal as specified in the renewal-option provision would have been ineffective to form a binding renewal contract, even had the notice of renewal been timely. See Ex parte Keelboat, 938 So.2d at 930-31 (quoting Robinson v. Martel Enters., Inc., 337 So.2d 698, 702-04 (Miss.1976)). C.O.W. argues that Keelboat waived this requirement of renewal because Keelboat did not object to C.O.W.’s failure to pay a portion of the initial franchise fee in its letter informing C.O.W. that the franchise renewal notice was untimely and therefore ineffective. However, as the legal-service providers point out, the franchise agreement states:
“No failure of [Keelboat] to exercise any power reserved to it in this Franchise agreement or to insist upon compliance by Franchisee with any obligation or condition in this Franchise agreement ... shall constitute a waiver of [Keel-boat’s] right to demand exact compliance with the terms of the Franchise agreement.”
Franchise agreement, paragraph XVII. On its face, this language precludes any argument that Keelboat could not refuse to renew the franchise agreement because it did not initially advise C.O.W. that it had failed to meet a condition precedent to renewal by not paying 50% of the initial franchise fee upon renewal. Cf. Fletcher v. U.S. Rest. Props., Inc., 881 So.2d 333, 339 (Miss.Ct.App.2004) (holding, in a case of recurring violations of provisions in a *1125 lease, that, under a similar nonwaiver provision, “failure of [a] lessor to insist upon strict compliance would not cause waiver of its right to later insist upon strict compliance”); Kirkland v. Chinita Land Dev., Inc., 798 So.2d 620, 623-24 (Miss.Ct.App.2001) (same).
C.O.W. makes no argument that the nonwaiver provision should be construed otherwise. Instead, C.O.W. cites several cases for the proposition that a nonwaiver provision itself may be waived: Exxon Corp. v. Crosby-Mississippi Res., Ltd., 40 F.3d 1474 (5th Cir.1995) (decided under Mississippi law); Siciliano v. Hudson, (Ms. 2:92CV061-D-A, April 3, 1996) (N.D.Miss.1996) (not reported in F. Supp.); and Charles Stores, Inc. v. Aetna Ins. Co., 428 F.2d 989 (5th Cir.1970). C.O.W. does not, however, cite any evidence or give any explanation as to why, in light of Exxon, Siciliano, and Charles Stores, the record in this case demonstrates that Keelboat waived application of the nonwaiver provision. Taranto Amusement Co. v. Mitchell Assocs., Inc., 820 So.2d 726, 730 (Miss.Ct.App.2002) (“To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention to permanently surrender the right alleged to have been waived.”). Moreover, although we view the evidence in the light most favorable to C.O.W., see Waddell & Reed, Inc., supra, we find no evidence in this record that Keelboat intended to surrender its rights under the nonwaiver provision.
“‘Where a contract is clear and unambiguous, its meaning and effect are matters of law which must be determined by the court.’ ” Fradella v. Seaberry, 952 So.2d 165, 171 (Miss.2007) (quoting IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 106 (Miss.1998) (citing in turn Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975))). Because the terms of the renewal option required payment of 50% of the initial franchise fee at the time of renewal as a condition precedent to renewal, because Keelboat did not waive its right to insist upon such a payment as a condition of renewal, and because the evidence is undisputed that C.O.W. did not pay 50% of the initial franchise fee at the time of renewal, C.O.W. would not have been entitled to renew the franchise agreement even if its notice of renewal had been timely. Therefore, C.O.W. cannot prevail on its malpractice claim against the legal-service providers for failing to timely provide notice of renewal, and the legal-service providers were entitled to judgment as a matter of law.

Cross-Appeal (case no. 1070272)

As grounds for their cross-appeal, the legal-service providers argue that they were entitled to a judgment as a matter of law regardless of the merits of C.O.W.’s appeal. According to the legal-service providers, C.O.W. did not present valid expert testimony to prove that the legal-service providers breached the standard of care. See Wilson v. Athens-Limestone Hosp., 894 So.2d 630, 634 (Ala.2004) (noting that “this Court can affirm a trial court’s judgment for any reason, even one not specifically given by the trial court.” (citing Taylor v. Stevenson, 820 So.2d 810, 814 (Ala.2001))). However, because we hold that the legal-service providers were entitled to judgment as a matter of law because C.O.W. did not have a legal right to renew the franchise even if the franchise renewal notice had been timely, we dismiss the legal-service providers’ cross-appeal as moot.
1070187 — AFFIRMED.
1070272 — DISMISSED AS MOOT.
STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ„ concur.
*1126 LYONS, J., concurs specially.
COBB, C.J., concurs in part and concurs in the result.

. Quina denies that Bonner informed him of the renewal deadline or requested that the notice of renewal be completed by any particular date. However, because we are reviewing the propriety of a judgment as a matter of law, we must view the evidence in the light most favorable to C.O.W., the nonmoving party. See Waddell & Reed, 875 So.2d at 1152.

. We note that C.O.W. makes no argument that the legal-service providers had or breached a duty to inform C.O.W. that paying 50% of the initial franchise fee at the time of renewal was a requirement of exercising the renewal option.

. The phrase “time of renewal” is not defined in the franchise agreement, but C.O.W. does not dispute the legal-service providers’ contention that the "time of renewal” was the latest date notice of renewal could have been timely given, i.e., January 3, 2003.