MAIN, Justice.
Coosa Cable Company, Inc. (“Coosa Cable”), sued Sycamore Management Group, LLC (“Sycamore”), and DirecPath, LLC (“DirecPath”). Coosa Cable sought and obtained both a temporary restraining order (“TRO”) and a preliminary injunction barring DirecPath from providing video-programming services to the tenants of an apartment building owned by Sycamore. As a condition of the TRO, Coosa Cable provided a security bond of $250. As a condition of the preliminary injunction, the trial court required Coosa Cable to provide a security bond of $100,000. After a hearing, the trial court entered a permanent injunction against Sycamore and Direc-Path and discharged Coosa Cable’s security bond. Sycamore and DirecPath appealed; this Court reversed the trial court’s order granting permanent injunctive relief to Coosa Cable. Sycamore Mgmt. Group, LLC v. Coosa Cable Co., 42 So.3d 90 (Ala. 2010) (“Sycamore I ”). Sycamore and DirecPath then sought to recover costs, damages, and attorney fees caused by the wrongful injunction, but the trial court denied their motion. Sycamore and Direc-Path now appeal from the trial court’s order denying their motion for damages under the security bond on the preliminary injunction.[1] We reverse and remand.
I. Factual Background and Procedural History
The pertinent facts are set out in this Court’s opinion in Sycamore I.
*1226 “Coosa Cable is an Alabama corporation that holds a franchise to provide telecommunication services to Pell City residents, including cable television, Internet services, and Internet telephone service — including emergency 911. DirecPath is a private cable operator based in Atlanta, Georgia, that provides satellite video programming, Internet services, and digital telephone service to its subscribers. Sycamore is an Alabama limited liability company that owns and manages several apartment complexes or multi-dwelling units, including Maple Village, which is located in Pell City. .
“Maple Village was constructed in 2004; EYC Companies (‘EYC’) owned the property and managed the apartment complex after the construction was completed. During the construction phase, Coosa Cable installed, at its own expense, a full cable-distribution plant at the Maple Village complex, including wiring and other equipment. Coosa Cable and EYC never entered into a contract for the provision of cable service to residents of Maple Village, nor did Coo-sa Cable pay EYC a fee for the privilege of serving the residents of Maple Village. The residents of Maple Village had the option to contract on a month-to-month basis with Coosa Cable for individualized service plans, including cable television, Internet services, and primary telephone service — including 911 service. Coosa Cable dealt directly with its customers at Maple Village; i.e., it billed the customers individually. Coosa Cable’s arrangement with the residents at Maple Village was nonexclusive in that the residents there were free to contract with other cable and/or communications providers.
“Sycamore acquired Maple Village from EYC in March 2007. On August 12, 2008, Sycamore entered into a written agreement with DirecPath whereby DirecPath would have the exclusive right to provide video-programming services (and a nonexclusive right to provide Internet and telephone services) to the residents of Maple Village. Debbie Taylor, the owner/manager of Sycamore, testified that Sycamore would receive approximately $700 to $1,100 per month under the agreement. Both Sycamore and DirecPath were aware of Coosa Cable’s business relationships with many of the Maple Village residents. At the time, Coosa Cable was providing its services to approximately 100 customers at Maple Village. In a letter dated November 10, 2008, DirecPath informed each of Coosa Cable’s customers at Maple Village that, as of December 10, 2008, ‘Coosa Cable [would] no longer service cable television for [them].’ It is undisputed that DirecPath intended to eliminate Coosa Cable’s service to Maple Village and to use Coosa Cable’s wires to run DireePath’s signal to Coosa Cable’s former customers.
“After Coosa Cable was made aware of the letter, it sued both Sycamore and DirecPath, alleging tortious interference with business and contractual relations and seeking injunctive relief to prevent further damage from such interference. Specifically, Coosa Cable pleaded that if DirecPath and Sycamore were permitted to proceed with their plans, Coosa Cable’s goodwill and its relationships with its current and future customers would be irreparably harmed. The trial court entered a temporary restraining order and subsequently entered a preliminary injunction, pending a full hearing on the merits.
“On February 24, 2009, following a hearing, the trial court entered a final judgment, granting Coosa Cable’s request for permanent injunctive relief *1227 based on Sycamore’s and DirecPath’s tortious interference with Coosa Cable’s relations with its customers at Maple Village. Specifically, the trial court ordered that Sycamore and DirecPath were enjoined from (1) ‘[mjaking any false or misleading statements to Coosa Cable’s customers or in any way interfering with its customer relationships’; (2) ‘[preventing or interfering with Coo-sa Cable’s access to its equipment’; and (3) ‘[interfering with or misappropriating Coosa Cable’s personal property in the form of its distribution plant, wiring, and equipment.’ Sycamore and Direc-Path appealed.”
42 So.3d at 91-93.
This Court held in Sycamore I:
“Sycamore, by virtue of its ownership of Maple Village and the existing chattel and fixtures, had the ability to contract with DirecPath so long as that contract did not interfere with an existing right. Coosa Cable had no existing right by contract, by statute, or by easement to provide cable service to the residents of Maple Village, and, therefore, Sycamore and DirecPath could not be enjoined from using Sycamore’s property. Because Coosa Cable is not entitled to injunctive relief, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.”
42 So.3d at 95.
On remand, Sycamore and DirecPath filed a motion for the recovery of wrongful-injunction damages pursuant to Rule 65.1, Ala. R. Civ. P. They requested damages for lost operating profits, depreciation expenses, attorney fees, and costs in an amount not less than the $100,000 bond posted by Coosa Cable as a condition of the preliminary injunction. Sycamore and DirecPath say that they presented evidence to substantiate their claims for damages but that Coosa Cable did not offer any evidence to rebut those claims. Instead, they say, Coosa Cable argued that because the trial court discharged the security bond when it entered the permanent injunction, there is no longer any bond from which Sycamore and DirecPath can recover damages. Coosa Cable also argued that wrongful-injunction damages cannot be recovered after the entry of a permanent injunction.
After a hearing, the trial court entered an order denying Sycamore and Direc-Path’s motion. The trial court stated:
“Rule 65(c) requires posting of security as a condition for interlocutory in-junctive relief. It does not apply to permanent injunctive relief, for which no security is required. See Dobbins v. Getz Exterminators of Alabama, Inc., 382 So.2d 1135 (Ala.[Civ.App.j 1980).
“Here, a bond was properly posted to secure the Court’s interlocutory order. After a full hearing on the merits, however, the Court entered a permanent injunction. The temporary injunction was superseded and the bond was expressly discharged and relinquished. No security was required on the permanent injunction and none was posted. It is well-settled that ‘[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.’ W.R. Grace & Go. v. Local Union 759, Int’l Union of United Rubber, 461 U.S. 757, 770 (U.S.1983). Thus, even if [Sycamore and DirecPath] were wrongly enjoined, they can have no recovery without a bond, and state no claim under the Alabama Rules of Civil Procedure or otherwise.”
II. Standard of Review
On appeal, this Court reviews de novo a trial court’s ruling on a question of *1228 law. Lucky Jacks Entm’t Ctr., LLC v. Jopat Bldg. Corp., 32 So.3d 565, 568 (Ala.2009). Because the issue presented in this case — whether damages can be awarded for a wrongful injunction if the security-bond posted to secure the preliminary injunction was discharged when the permanent injunction was issued — is a legal question, we apply a de novo standard of review to the trial court’s order denying the motion for damages filed by Sycamore and DirecPath, not the exceeds-its-discretion standard we would employ to review a trial court’s order awarding damages for a wrongful injunction.[2]
III. Analysis
Rule 65(c), Ala. R. Civ. P., states, in pertinent part:
“No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained....
“The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule.”
In lieu of a traditional security bond, the trial court accepted an instrument filed with the court by Coosa Cable, which stated:
“SURETY BOND “RECITALS
“1. On January 15, 2009, the Court granted [Coosa Cable’s] Request for Preliminary Injunction and issued an order (the ‘Order’) against [Sycamore and DirecPath].
“2. The Court issued the Order on the condition that [Coosa Cable] file a One Hundred Thousand and No/100 Dollar ($100,000.00) bond as security.
“3. Coosa Cable Company, Inc., as Surety, hereby acknowledges that it is bound to pay the sum of $100,000.00, as evidenced by good and sufficient funds held in the Surety’s Money Market Account No. 18012195, at Metro Bank, Pell City, Alabama, for any damages incurred as a result of the Order if it is determined that [Sycamore and Direc-Path] were wrongly enjoined or restrained.
“Dated this 28th day of January, 2009. “For Coosa Cable Company, Inc.:
/s/ Jeff Smith “JEFF SMITH “Surety”
The motion for damages filed by Sycamore and DirecPath is expressly allowed by Rule 65.1, which states:
“Whenever these rules require or permit the giving of security by a party, and security is given in the form of a bond or stipulation or other undertaking with one or more sureties, each surety submits to the jurisdiction of the court and irrevocably appoints the clerk of the court as the surety’s agent upon whom any papers affecting the surety’s liability on the bond or undertaking may be served. The surety’s liability may be enforced on motion without the necessity of an independent action. The motion and such notice of the motion as the court prescribes may be served on the clerk of the court, who shall forthwith mail copies to the sureties if their addresses are known.”
*1229 In Ex parte Waterjet Systems, Inc., 758 So.2d 505, 511-12 (Ala.1999), this Court defined the standards for the recovery of damages under a security bond:
“We hold that a party does not have to prove bad faith to recover damages on a bond posted as a condition to obtaining an injunction.... Consistent with the language of Rule 65(c), we hold that in order to recover damages on a Rule 65(c) bond the party seeking recovery need only establish that he or she was wrongfully enjoined or restrained.
“Once a party establishes that he or she was wrongfully enjoined or restrained, that party has a right to recover damages and can recover those damages that are ‘the actual, natural and proximate result of the [wrongful] injunction.’ Alabama Cablevision v. League, 416 So.2d 483, 435 (Ala.Civ.App. 1982). These damages include compensation for injury, including attorney fees, incurred as the result of the injunction. However, the bond is not to be used to pay other damages that ‘the court may decree to be paid on the merits of the case.’ Myrick v. Finance Am. Credit Corp., 404 So.2d 700, 704-05 (Ala.Civ.App.1981) (citations omitted.) The party can either use the motion procedure provided in Rule 65.1, Ala. R. Civ. P., or proceed under the party’s right to an independent action for recovery on the bond. See [Talladega Little League, Inc. v.] Anderson, [577 So.2d 1293 (Ala.1991) ]. If the party establishes that it was wrongfully enjoined and suffered damage and incurred costs or attorney fees as a proximate result of the wrongful injunction, the trial court must award compensation for the party’s damage, costs, and attorney fees.
[[Image here]]
“Although Rule 65(c) has contained the phrase ‘wrongfully enjoined or restrained’ since its adoption, this Court has not before now had the opportunity to define that phrase. Federal courts have construed the same phrase in Rule 65(c), Fed.R.Civ.P., to mean that a party is wrongfully enjoined ‘when it turns out the party enjoined had the right all along to do what it was enjoined from doing.’ Nintendo of America, Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir.1994), cert. denied, 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994); see, also, Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir.1990) (‘A party has been “wrongfully enjoined” under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act.’)....
“We agree with this definition of the phrase “wrongfully enjoined or restrained.’ It is a simple definition that provides clear guidance for a trial court. Furthermore, this definition requires that the trial court base the liability on the bond on the merits of the plaintiffs claim and not on some procedural defect .... ”
Sycamore and DirecPath first argue that the trial court erred in denying their motion for damages because this Court in Sycamore I reversed the trial court’s judgment in its entirety, including, they argue, that portion of the judgment discharging Coosa Cable from the security bond. Therefore, they argue, they were entitled to pursue an action seeking recovery from Coosa Cable’s security bond even after the bond was released by the trial court. Coo-sa Cable argues that Sycamore and Direc-Path cannot recover on the security bond because, it says, it was discharged when the trial court entered the permanent injunction. Coosa Cable also argues that Sycamore and DirecPath have waived *1230 their argument concerning the security bond because they did not specifically raise the discharge of the bond in their appeal in Sycamore I. Because they did not argue that issue in that appeal, Coosa Cable argues, Sycamore and DirecPath cannot recover damages based on a wrongful injunction. Sycamore and DirecPath contend, however, that because this Court’s opinion reversed the entire judgment, it was not necessary for them to specifically argue on appeal that the security bond should not have been discharged.
Sycamore and DirecPath rely on Bonner v. Lyons, Pipes & Cook, P.C., 26 So.3d 1115 (Ala.2009), in which this Court affirmed a judgment as a matter of law entered in favor of legal-service providers in a malpractice action. Bonner owned a corporation, C.O.W., Inc., that had entered into a franchise agreement with Keelboat Concepts, Inc., under the terms of which C.O.W. had the option to renew the franchise agreement at the end of the initial term so long as it provided Keelboat with a timely written notice of its intent to renew and paid 50% of the then current initial franchise fee at the time of renewal. When C.O.W. failed to provide either the notice of renewal or the franchise fee due, Keelboat sued C.O.W., seeking a declaration that the franchise agreement had been terminated. After a bench trial, the trial court rejected all Keelboat’s arguments and declared that the franchise agreement had not been terminated. Keelboat appealed to the Court of Civil Appeals, which affirmed the trial court’s judgment, without an opinion. Keelboat Concepts, Inc. v. C.O.W., Inc. (No. 2030174, October 8, 2004), 921 So.2d 477 (Ala.Civ.App.2004) (table). Keelboat then petitioned this Court for a writ of certiorari; this Court granted the writ only as to the issue concerning the timeliness of the renewal notice. This Court concluded that C.O.W. did not timely renew the franchise agreement, and it reversed the judgment of the Court of Civil Appeals. Ex parte Keelboat Concepts, Inc., 938 So.2d 922 (Ala.2005). The Court of Civil Appeals then entered an order reversing the judgment of the trial court and remanded the case for further proceedings consistent with this Court’s opinion. Keelboat Concepts, Inc. v. C.O.W., Inc., 938 So.2d 932 (Ala.Civ.App.2006).
Bonner and C.O.W. then brought the legal-malpractice action against the legal-service providers, alleging that the legal-service providers had negligently failed to renew the franchise agreement because they sent the notice of the intention to renew to Keelboat after the deadline for such notice had expired. The case proceeded to a jury trial, but after Bonner and C.O.W. had rested their case, the legal-service providers moved for a judgment as a matter of law (“JML”), and the trial court granted their motion. Bonner and C.O.W. appealed, and the legal-service providers cross-appealed. C.O.W. argued that because the trial court ruled in its favor in Keelboat’s declaratory-judgment action, it would have been legally entitled to renew the franchise agreement even though it failed to pay the franchise fee. Bonner and C.O.W. maintained that the only basis for this Court’s reversal of the trial court’s judgment in favor of C.O.W. was this Court’s holding that the late notice of renewal was ineffective. C.O.W. argued that the doctrine of collateral es-toppel barred the legal-service providers from relitigating both issues because, C.O.W. argued, they were resolved in Ex parte Keelboat Concepts. This Court rejected that argument in Bonner.
“When this Court decided Ex parte Keelboat Concepts, it reversed the judgment of the Court of Civil Appeals and remanded the case in its entirety. Although this Court had granted certiorari *1231 review only as to one of the issues the Court of Civil Appeals had decided in favor of C.O.W. and Bonner, and although it was only on the basis of that issue that this Court reversed the judgment of the Court of Civil Appeals, that reversal necessarily reversed the entire judgment of the Court of Civil Appeals. When, in compliance with this Court’s remand order, the Court of Civil Appeals in turn reversed the trial court’s judgment, it necessarily reversed the trial court’s judgment in its entirety.
“In Van Schaack v. AmSouth Bank, N.A., 586 So.2d 192 (Ala.1991), a lower court’s judgment had been reversed, and this Court rejected a subsequent attempt by a party to rely upon a holding in the lower court’s judgment that was not the reason for the reversal. As this Court explained, ‘well-settled in the law of Alabama is the principle that a judgment is a legal entity — a single unit— the reversal of which annuls it in its entirety and vacates all rulings that are contained within it’ 586 So.2d at 195 (quoting Ex parte Riley, 464 So.2d 92, 93-94 (Ala.1985)) (emphasis omitted).
“Thus, C.O.W. has not met its burden, as the party seeking the benefit of the doctrine of collateral estoppel, to demonstrate the existence of a final judgment adjudicating any issue other than that the notice of renewal was invalid because it was untimely. Thus, the doctrine of collateral estoppel does not prevent the legal-service providers from re-litigating issues decided by the trial court in the Keelboat declaratory-judgment action before its original judgment was reversed on another issue.”
26 So.3d at 1121 (emphasis added).[3]
Sycamore and DirecPath also rely on State of Alabama ex rel. Siegelman v. EPA, 925 F.2d 385, 388 (11th Cir.1991), and Piambino v. Bailey, 757 F.2d 1112, 1142-43 (11th Cir.1985). In Piambino, the United States Court of Appeals for the Eleventh Circuit discussed two cases addressing the plaintiffs liability under a security bond after the defendant proved it had been wrongfully enjoined. In Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164 (9th Cir.1976), the trial court entered a preliminary injunction against Buddy Systems and required Exer-Genie to post a $100,000 bond. After trial, the court entered a permanent injunction against Buddy Systems and discharged Exer-Genie’s bond. The United States Court of Appeals for the Ninth Circuit reversed the trial court’s judgment on appeal. Buddy Systems then filed an action to recover damages for the wrongful injunction; the trial court awarded it $35,000. The Ninth Circuit Court of Appeals reversed the damages award and held that the trial court did not have jurisdiction in an action on a bond that had been previously discharged. The Ninth Circuit Court of Appeals rejected Buddy Systems’ argument that the bond discharge was implicitly reversed when the Court of Appeals reversed the judgment entering the permanent injunction and criticized Buddy Systems for not raising the alleged wrongful bond discharge on the initial appeal. The Ninth Circuit Court of Appeals disagreed with the reasoning in a case decided previously by the United States Court of Appeals for the Tenth Circuit — Atomic Oil Co. of Oklahoma v. Bardahl Oil Co., 419 F.2d 1097 (10th Cir.1969). The defendants in Atomic Oil also sought to recover damages for wrongful injunction. The trial court had *1232 entered a preliminary injunction in favor of Atomic Oil and required it to post a $50,000 bond. After a trial, the court granted a permanent injunction, discharged the $50,000 bond, and ordered Atomic Oil to post a $25,000 bond. The Tenth Circuit Court of Appeals reversed the trial court’s judgment on the ground that the injunction was based on a clearly erroneous finding. Bardahl then sought recovery of damages under the bonds; the trial court entered a judgment in its favor for $75,000. Atomic Oil argued on appeal that recovery on the $50,000 bond was precluded because the trial court had discharged it, but the Tenth Circuit Court of Appeals affirmed the trial court’s judgment, stating that the court’s order discharging the bond did not negate Bar-dahl’s recovery of damages. The Tenth Circuit Court of Appeals also concluded that its judgment in the first appeal necessarily determined that the preliminary injunction had been improperly granted and therefore activated both security bonds.
In Piambino, the Court of Appeals for the Eleventh Circuit endorsed the Tenth Circuit rule.
“We have not had the occasion to decide whether a party who receives the proceeds of a cash injunction bond dissolved pending appeal must redeposit them when the injunction is vacated as improvidently granted. Other circuits have decided this question, however, holding that a prematurely dissolved bond must be redeposited. The Tenth Circuit’s rationale is persuasive. In Atomic Oil Co. of Oklahoma v. Bardahl Oil Co., 419 F.2d 1097 (10th Cir.1969), ... a case, like the one here, involving the dissolution of an injunction bond pending appeal, the court noted the absolute nature of Rule 65(c)’s bond requirement: before a court may issue a preliminary injunction, a bond must be posted. This requirement, the court found, was intended by Congress to protect enjoined parties from the losses that result from improvidently granted injunctions. The court observed that, if it did not mandate the reposting of the bond, trial judges might pay mere lip service to both the letter and spirit of Rule 65(c). Id. at 1101. See also Northeast Airlines, Inc. v. Nationwide Charters & Conventions, Inc., 413 F.2d 335, 338 (1st Cir.1969); but see Buddy Sys., Inc. v. Exer-Genie, Inc., 545 F.2d 1164 (9th Cir.1976)....
“The consequences that can flow from the premature dissolution of a Rule 65(c) bond are evident in the instant case. Unless the bond, here, is reposted, Syl-va, as Compliance Officer for the California Judgment, will lose a vital remedy, the recovery of damages against the bond, the law affords a party who has been wrongfully enjoined.”
757 F.2d at 1142-43. The Court of Appeals for the Eleventh Circuit followed Piambino in Siegelman, holding that if an injunction has been erroneously issued, “ ‘a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case.’ ” 925 F.2d at 390 (quoting with approval Coyne-Delany Co. v. Capital Dev. Bd. of Illinois, 717 F.2d 385, 391 (7th Cir.1983)). See also Milan Exp., Inc. v. Averitt Exp., Inc., 208 F.3d 975, 979-80 (11th Cir.2000) (“[Pjarties aggrieved by a wrongfully issued injunction may sue to recover on an injunction bond under [28 U.S.C.] Section 1352.”). The majority of the federal appellate courts follow the principle that a trial court can award damages to a party that has been wrongfully enjoined, although they disagree as to whether the party wrongfully enjoined is entitled to recover only substantiated damages or the trial court has discretion in determining the damages *1233 award. See, e.g., Northeast Airlines, Inc. v. Nationwide Charters & Conventions, Inc., 413 F.2d 335 (1st Cir.1969); Nokia Corp. v. InterDigital, Inc., 645 F.3d 553 (2d Cir.2011); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir.1989); Division No. 1, Detroit, Bhd. of Locomotive Eng’rs v. Consolidated Rail Corp., 844 F.2d 1218 (6th Cir.1988); Coyne-Delany, 717 F.2d at 391; Atomic Oil, 419 F.2d at 1101 (10th Cir.1969); and Piambino, 757 F.2d at 1142-43 (11th Cir.1985). But see Buddy Sys., 545 F.2d at 1169.
Sycamore and DirecPath direct us to a New York case, Factors Etc., Inc. v. Pro Arts, Inc., 562 F.Supp. 304 (S.D.N.Y.1983), in which the United States District Court for the Southern District of New York, citing Atomic Oil, concluded that the defendants were entitled to damages as a result of a wrongful injunction after a permanent injunction was reversed on appeal, despite the facts that the trial court had discharged the bond when it entered the permanent injunction and that the defendants did not raise the bond discharge in their appeal.
The Factors court relied on Arkadelphia Milling Co. v. St. Louis Southwestern Ry., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919).
“In Arkadelphia ..., the Supreme Court discussed the power of the enjoining court to award damages for wrongful injunction under a bond that it had discharged. The Court posited, but found it unnecessary to decide[,] the question whether reversal of the main provisions of a final decree that has the effect of discharging a bond is an implicit reversal of the discharge. [249 U.S.] at 143-44. The Court concluded that because the lower court had explicitly retained jurisdiction for the purpose of making further orders as might be necessary, and the Supreme Court’s earlier mandate permitted further proceedings, defendants’ failure to appeal from the enjoining court’s action in discharging the bonds did not prevent an assessment of damages under the bonds. Id. at 144.
“Thus, regardless of whether the Second Circuit’s mandate reversed the discharge of the bond — and arguably it did, since it reversed the entire judgment without distinguishing among its provisions — Arkadelphia provides support for the conclusion that this Court may properly award damages. This Court entered the permanent injunction and discharged the bond in an Interlocutory Judgment entered August 27, 1980. In that judgment this Court, like the court in Arkadelphia, retained jurisdiction for the purpose of making any further orders necessary and proper in this action. Although the Second Circuit’s mandate did not expressly authorize further proceedings — authorization that was, admittedly, significant to the Court in Arka-delphia — neither did it expressly limit or foreclose them. Entry of summary judgment dismissing plaintiffs’ complaint and consideration of the issue of damages are appropriate in light of the Second Circuit’s mandate. Accordingly, this Court concludes that its earlier discharge of the bond, and defendants’failure specifically to appeal that discharge, does not preclude an award of damages.”
562 F.Supp. at 307-08 (final emphasis added; footnotes omitted). The Factors court concluded that even though the plaintiffs had acted in good faith in seeking the injunction allowing them to have an exclusive license to sell certain merchandise, they had enjoyed the benefit of that exclusive license because of an injunction to which they ultimately were found not to be entitled. The defendants prevailed in the *1234 case, and, therefore, the court said they were entitled to recover damages for the wrongful injunction. However, the court said, they would be entitled only to those damages proven to have been proximately caused by the injunction.
Sycamore and DirecPath contend that the trial court’s reliance on W.R. Grace & Co. v. Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), was misplaced. The trial court’s order quoted the following statement from W.R. Grace: “A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.” 461 U.S. at 770, 103 S.Ct. 2177. This statement is inapposite because W.R. Grace did not involve an injunction bond or a Rule 65.1 motion. There is no mention in the case of the issuance of an injunction of any kind, and it did not address recovery of damages for a wrongful injunction. The Supreme Court stated that the sole issue before it in W.R. Grace was whether a labor arbitration award should be enforced, and the decision is grounded upon the absence of any bond whatsoever. Although no damages for a wrongful injunction would be allowed if no bond had been posted, Coosa Cable posted a bond in this case, thus distinguishing it from W.R. Grace.
Finally, Sycamore and DirecPath argue that the trial court’s reliance on Dobbins v. Getz Exterminators of Alabama, Inc., 382 So.2d 1135 (Ala.Civ.App.1980), is also misplaced. In Dobbins, the Court of Civil Appeals held only that no bond was required before the trial court entered a permanent injunction. That holding does not mean that a defendant cannot recover damages for a wrongful injunction when a preliminary injunction has merged into a permanent injunction and that injunction is subsequently reversed on appeal. See Siegelman, 925 F.2d at 388; Piambino, 757 F.2d at 1142-43; Atomic Oil, 419 F.2d at 1100; and Factors, 562 F.Supp. at 307-OS.
Coosa Cable argues in response that a security bond is issued when a preliminary injunction is entered and secures that injunction pending a hearing on the merits. Here, it argues, the preliminary-injunction order was limited to the period between its entry and the conclusion of the hearing on the merits, and, Coosa Cable asserts, its security bond “expressly limited Coosa Cable’s obligation to damages caused ‘as a result of [the Preliminary Injunction Order.’ ” Coosa Cable’s brief, at pp. 13-14. Coosa Cable omits the remainder of its bond instrument, however, which acknowledges that it is bound to pay $100,000 “for any damages incurred as a result of the Order if it is determined that the Defendants were wrongfully enjoined or restrained.” (Emphasis added.) Coosa Cable then continues:
“A surety bond is merely the voluntary submission of a party to potential liability as a condition for the entry of an interlocutory injunction. See Talladega Little League, Inc. v. Anderson, 577 So.2d 1293, 1296 (Ala.1991) (‘the bond is the contract of the parties executing it, [and] the [rule] prescribes its terms and conditions, and the right of action arises immediately upon its breach’) (quoting Miller v. Wood, 257 Ala. 594, 595, 60 So.2d 353, 354 (1952)). Liability under the bond attaches only in accordance with the terms agreed upon. Id.”
Coosa Cable’s brief, at p. 14. Coosa Cable says that it freely chose to post security when the trial court entered the preliminary injunction, but it maintains that its liability for damages was limited to potential damage caused by the preliminary injunction and that its liability was extin *1235 guished when the trial court entered the permanent injunction.
Coosa Cable also argues that “[a] trial victor is not required to secure the appeal of the trial loser.” Coosa Cable’s brief, at p. 18. It concludes:
“No case cited by Sycamore and Direc-Path, from any jurisdiction, holds otherwise. Absolutely no law, rule, judicial decision, or legal principle supports Sycamore and DirecPath’s claim for damages of attorneys’ fees accrued while they pursued their appeal.”
Coosa Cable’s brief, at pp. 18-19. Certainly an appellee is not required to “secure” appellate proceedings for an appellant. We address in this case only the principle that a party who has been wrongfully enjoined is entitled to seek damages for harm suffered because of an injunction that was entered in error.
We agree with Coosa Cable that its security bond was a contract whereby, pursuant to the express language of the contract, it agreed to pay Sycamore and DirecPath the “costs, damages, and reasonable attorney fees” required by Rule 65(c) if it was determined that the preliminary injunction was wrongful. We disagree, however, that Coosa Cable’s liability or its contract was extinguished upon the entry of the permanent injunction. Sycamore and DirecPath have conceded that the costs, damages, and reasonable attorney fees it can recover from Coosa Cable are limited to the period during which the bond was in force, i.e., from the entry of the preliminary injunction until the entry of the permanent injunction, and also that such recoverable damages are limited to the amount of the surety bond. It is the trial court’s province to determine the exact amount of the costs, damages, and attorney fees that Coosa Cable is obligated to pay Sycamore and DirecPath as a result of the wrongful injunction.
As the parties have pointed out, no Alabama case addresses the precise question presented by this case, but Sycamore and DirecPath have relied on persuasive authorities from this Court and from several federal courts, including cases from the United States Court of Appeals for the Eleventh Circuit. “Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure.” Hilb, Rogal & Hamilton Co. v. Beiersdoerfer, 989 So.2d 1045, 1056 n. 3 (Ala.2007). We find the reasoning of those cases compelling, and we conclude that, when a party provides the security bond required by Rule 65(c) upon the entry of a preliminary injunction and that injunction is determined to be wrongful, the party wrongfully enjoined is entitled to seek an award of damages caused by the wrongful injunction up to the amount of the bond for the period the bond was in force. We further conclude that such a damages award is not barred by the failure of the party enjoined to specifically appeal the discharge of the security bond and that a security bond that has been discharged upon the entry of a permanent injunction is reinstated if that permanent injunction is later determined to have been wrongful.
We hold that after this Court held in Sycamore I that Sycamore and DirecPath had been wrongfully enjoined, they were entitled to seek an award from Coosa Cable of the damages caused by the wrongful injunction. Sycamore and DirecPath may pursue those damages despite the discharge of the security bond by the trial court when the permanent injunction was entered and the lack of argument on appeal from Sycamore and DirecPath in Sycamore I that the security bond should not have been discharged. Under the terms *1236 of the security bond posted by Coosa Cable, it is obligated to pay Sycamore and DirecPath their costs, damages, and reasonable attorney fees from the entry of the preliminary injunction through the entry of the permanent injunction in an amount to be determined by the trial court, but not to exceed $100,000, the amount of the bond. Because Sycamore and DirecPath are entitled to an award of damages caused by the wrongful injunction, the trial court erred when it denied Sycamore and DirecPath’s motion for damages filed pursuant to Rule 65.1.
IV. Conclusion
Because the trial court erred in denying Sycamore and DirecPath damages for the wrongful injunction, we reverse the trial court’s order denying their motion seeking those damages, and we remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, SHAW, and WISE, JJ., concur.
MURDOCK, J., dissents.

. Sycamore and DirecPath do not seek any recovery of damages pursuant to the bond securing the TRO. In their motion to recover damages for the wrongful injunction, they "request recovery in an amount not less than the $100,000.00 Surety Bond posted by Coosa Cable.” Motion, at p. 5. In their reply brief on appeal, Sycamore and DirecPath state:
"The issue is whether Sycamore and Direc-Path can recover on the $100,000 bond that was posted by Coosa Cable at the preliminary injunction stage of this proceeding by virtue of this Court’s reversal of the trial court’s order discharging the bond.” Reply brief, at p. 1.

. See Ex parte Waterjet Sys., Inc., 758 So.2d 505, 510 (Ala.1999) ("On appeal, a trial court’s award of ‘costs, damages, and ... attorney fees’ pursuant to a security bond will not be disturbed absent an abuse of discretion.” (quoting Marshall Durbin & Co. v. Jasper Utils. Bd., 437 So.2d 1014, 1027 (Ala.1983))).

. This Court also affirmed the JML as to Bonner’s claims against the legal-service providers because Bonner submitted no argument to the Court challenging the dismissal of his claims based on his lack of standing. 26 So.3d at 1120.